HANNAH F. PITTMAN v. ELISHA S. BURR, ADMINISTRA-
TOR, ETC., ET AL.

*Will—Lapse of devise—Evidence—Husband and wife—Equity juris-
diction.*

1. If a woman, in contemplation of marriage, deeds her property
   to her intended husband, and he thereupon executes a will
   devising it to her, and they subsequently intermarry, the result
   is to vest the title in him and his heirs forever if she dies first,
   and to revest the title in her and her heirs if he dies first.
   Nothing but the declaration of the parties, expressed in the
   deed or the will, will change this result.   It cannot rest in
   parol.   2 Redf. Wills, 493, par. 9.

2. Where, in consequence of the death of a devisee before that of
   the devisor, the only question for determination is whether the
   title to the land passed by the will to the devisee's heirs, or
   remains in those of the devisor, such heirs have an adequate
   remedy at law through an action of ejectment.

3. An allegation in a bill that "complainant believes that, in the
   trial in a court of law, she would be hampered and limited in
   her proof by the strict rules of the common law," is not suf-
   ficient to warrant the interposition of the equity side of the
   court, the rules of evidence being the same in both courts.

Appeal from Lenawee.   (Loveridge, J., presiding.)
Argued January 30, 1890.   Decided February 20, 1890.

Bill to compel the specific performance of a devise of
lands.   Complainant appeals from decree dismissing her

bill. Decree affirmed. The facts are stated in the opinion.

*C. E. Weaver* (*A. H. Wilkinson,* of counsel), for complainant, contended:

1. The provision in the will for Mrs. Owen was not a gift, over which the testator reserved control during his life, but a testamentary contract, made upon a valuable consideration moving from the devisee, and irrevocable, vesting in her a present valuable property right, descending to her heirs at law upon her death; citing Schouler, Wills, §§ 451–454; Wat. Spec. Perf. § 41; *Philips v. Philips,* 3 Hare, 281; *Williamson v. Naylor,* 3 Younge & C. 208; *Sibthorp v. Moxton,* 1 Ves. Sr. 49; *Turner v. Martin,* 7 De G. M. & G. 429; *Taylor v. Mitchell,* 87 Penn. St. 518; *Johnson v. Hubbell,* 10 N. J. Eq. 332; *Van Dyne v. Vreeland,* 11 Id. 370, 12 Id. 142; *Schult v. Society,* 41 Id. 115; *Stone v. Todd,* 49 N. J. Law, 274; *Brinker v. Brinker,* 7 Penn. St. 55; *Logan v. McGinnis,* 12 Id. 27; *Bolman v. Overall,* 80 Ala. 451, and cases cited; *Parsell v. Stryker,* 41 N. Y. 480, and cases cited; *Wellington v. Apthorp,* 145 Mass. 69, and cases cited; *Gilpatrick v. Glidden,* 81 Me. 137; *Cole v. Niles,* 3 Hun, 326; *Caviness v. Rushton,* 101 Ind. 500; *Sword v. Keith,* 31 Mich. 247; *Faxton v. Faxon,* 28 Id. 159; *Leonardson v. Hulin,* 64 Id. 1; *Carmichael v. Carmichael,* 72 Id. 76.

2. The identical thing given by specific bequest is severed from the bulk of the testator's property from his death, by operation of the will, notwithstanding the liability for contribution towards debts; citing *Proctor v. Robinson,* 35 Mich. 284; and it should be delivered at once to the devisee; citing *Eberstein v. Camp,* 37 Mich. 176; *Kent v. Dunham,* 106 Mass. 586.

3. Courts favor the vesting of estates; citing *Toms v. Williams,* 41 Mich. 565; *Rood v. Hovey,* 50 Id. 395.

*Bean & Lane,* for defendant Burr, contended:

1. A bill for the construction of a will can only be filed by some one called upon to execute it in some way; citing *Chipman v. Montgomery,* 63 N. Y. 221; *Hogan v. Hogan,* 44 Mich. 147.

2. A will cannot be contradicted or varied by parol testimony; citing 2 Pom. Eq. Jur. § 1036; 1 Story, Eq. Jur. § 179; 1 Redf. Wills, 498; Jar. Wills, 410; *Gifford v. Dyer,* 2 R. I. 99; *Jackson v. Sill,* 11 Johns. 201; *Avery v. Chappel,* 6 Conn. 270; *Mann v. Mann,* 1 Johns. Ch. 231; *Kurtz v. Hibner,* 55 Ill. 514; *Fitzpatrick v. Fitzpatrick,* 36 Ia. 674; *Hill v. Felton,* 47 Ga. 455; *Waldron v. Waldron,* 45 Mich. 350.

3. Complainant's rights must be disclosed by her bill, and whatever decree, if any, she may be entitled to, must be founded upon it; citing *Smith v. Rumsey*, 33 Mich. 189; *Gene v. Maynard*, 44 Id. 578; *Tilden v. Streeter*, 45 Id. 533; *Huggett v. Case*, 61 Id. 481.

4. The rule of law is that a pecuniary obligation is presumed paid after the lapse of twenty years from its maturity; citing *Giles v Baremore*, 5 Johns. Ch. 545; *Sparhawk v. Buell*, 9 Vt. 41; *Gulick v. Loder*, 1 Green, Law (N. J.), 68 (23 Am. Dec. 711); *Rogers v. Judd*, 5 Vt. 236 (26 Am. Dec. 301); *Walker v. Emerson*, 20 Tex. 706 (73 Am. Dec. 207); *Gregory v. Com.*, 121 Penn. St. 611 (6 Am. St. Rep. 804); *Cowie v. Fisher*, 45 Mich. 629; *Ins. Co. v. Brown*, 11 Id. 265.

5. The devise cannot pass except any claimed indebtedness be released; no one but the personal representative of the devisee could release; none has been appointed; no release has or could be made; therefore, under no circumstances does the devise pass; citing *Hollowell v. Cole*, 25 Mich. 345; *Palmer v. Palmer*, 55 Id. 293; *Hillman v. Schwenk*, 68 Id. 293, 297.

6. On the question of the mode of preventing the lapse of a legacy by the prior death of a legatee, counsel cited 2 Redf. Wills. 160, 162, 163; 2 Williams, Exrs. 1206–1210; 1 Jar. Wills, 338, 339; *Barnett's Appeal*, 104 Penn. St. 342; *Kimball v. Story*, 108 Mass. 382; *Hawn v. Banks*, 4 Edw. Ch. 664.

7. There is no presumption that a legacy is in payment of a debt when the legacy and debt are of a different nature, either with reference to the subjects themselves or the interest given; citing 2 Roper, Leg. 1040.

8. A verbal agreement to make a particular disposition of lands is void as within the statute of frauds; citing *DeMoss v. Robinson*, 46 Mich. 62.

9. Where there are two equally well supported theories upon which a will may be construed, the one must be adopted which prefers the kin of the testator to strangers; citing 2 Williams, Exrs. 1088 (note *j*); *Quinn v. Hardenbrook*, 54 N. Y. 83.

GRANT, J. The complainant is a niece of one Mrs. Smith, deceased, formerly Nancy C. Owen. Mrs. Smith died childless and intestate, leaving four nephews and nieces as her next of kin and sole heirs at law. She files this bill against the administrator and heirs at law of Willard Smith, deceased, to compel the specific perform-

ance of a devise of lands to Mrs. Smith by the last will and testament of said Willard Smith, which was duly admitted to probate. The clause of the will upon which complainant bases her remedy is as follows:

"*First.* I give, bequeath, and devise to Nancy C. Owen, of Cambridge, aforesaid, my farm situate in said town of Cambridge, which I purchased of said Nancy C. Owen, consisting of two hundred and forty acres (not including, however, what I have since added to said farm), together with all the hereditaments thereunto belonging, which devise is to be in full of all claims and demands which said Nancy C. Owen may have against me at the time of my decease, whether in consideration of the purchase of said farm, for services, or otherwise."

This will was made on November 5, 1852. It was not discovered until some months after the death of Mr. Smith, which occurred in March, 1884, when it was found in an old trunk, together with other papers formerly belonging to him.

These lands were devised to Nancy C. Owen by her former husband, who died in 1846. Some time after Mr. Owen's death, Mr. Smith took up his residence at the home of Mrs. Owen, and from that time his residence there was continuous. February 20, 1850, she deeded to him these lands, and the deed was shortly after recorded. They were married April 14, 1859, and lived together upon the lands until her death, May 30, 1877; and he continued in possession thereof until his death.

The deed and the will constitute the only written evidence of the business transactions between them in regard to these lands. All else rests in parol. The parties and the witnesses to their agreements are all dead except the witness Judge Stacy, who was her attorney, prior to the making of the will, in the negotiations between them concerning this matter. He testifies, in substance, as follows:

"I told Mr. Smith that Mrs. Owen informed me that she had deeded her farm to him; that she had no papers for it, and that she was anxious that he should fix it so as to protect her interest; that she claimed he had paid nothing for it. He said there was no payment on it; that he would go home, talk the matter over with her, and he would make some arrangement that would be satisfactory to her. Shortly after, they came together into my office. Mrs. Owen said that she wanted the matter fixed so as to protect her interests in the matter,—she thought she had not got anything to show for the purchase price of the land; and it was talked over how it should be done. Mrs. Owen said she wanted a mortgage. Mr. Smith said he did not want to give a motgage. Mrs. Owen then spoke of a note, and he did not want to give a note. They had a long talk together about it, and finally they themselves agreed that they would make two wills,—one by Mr. Smith to her, and one by her to Mr. Smith; the will by Mrs. Owen devising the bulk of her property, and everything of hers, to Mr. Smith, with some legacies out, and the one of Mr. Smith devising all his property to her, with some items out, and some little devises that were made. At their request, I drew up two such papers. Mr. E. B. Wood and myself were witnesses. He signed one · will, and she signed the other. * * * Mr. Wood is dead. The will of Mrs. Owen she handed to Mr. Smith, and the will of Mr. Smith he handed to her.

"Subsequently she saw me, and talked with me in regard to the matter, and requested me to inform Mr. Smith of her views, and I did so. I wrote a note to Mr. Smith, and shortly after he called at my office. I told him that Mrs. Owen was dissatisfied with the way matters were, and she wanted them arranged differently,—she thought she had not got security; and he said that he thought that she was made dissatisfied by some of the neighbors,—saying that he was willing to do what was right by her, and that he would talk the matter over with her, and would make some arrangement that should be satisfactory.

" A while after that,—I cannot tell how long, but not a great while,—Mr. Smith came again into the office, and said he and Mrs. Owen had come to an agreement; and he told me that the agreement was that he was to make a contract agreeing to convey back the property to her

whenever she should request it, and that he wanted me to draw a paper of that kind. * * * I drew up the paper. The substance of the paper was that he would convey to her the land that she had conveyed to him whenever she should request it. Smith signed the paper. I signed it as a witness. He said he would take the paper up, and give it to her; that she had said she would be satisfied. Afterwards, I had a talk with her, and then with him. I told him that she expressed herself dissatisfied with the contract; that she was told that he might convey the land away, and she had no security; and that she wanted him to make another paper,—to make some change,—to make a paper in the place of this. He expressed himself in the same way he had before, in regard to his willingness to make it perfectly satisfactory, so far as she was concerned. He thought she had not any reason to be dissatisfied with his good faith, or with his doing what was right and fair by her; and he said he had been talking the matter over, and that the two would come down and have me make out another paper in the place of this. Subsequent to that, Mr. Smith told me they came down to Tecumseh, and I was not there; that he had made a will, and that she was perfectly satisfied with it; that he had willed to her the land that he had got of her in payment for the land, and for any other indebtedness that he should owe her."

The witness further testified that Mrs. Owen, during this time, was not satisfied with the way Mr. Smith was doing in regard to their personal relations, and that he, as her attorney, once told him that he must deed the property to her, or he must marry her. The consideration in the deed was $2,000. The land was worth at that time about $5,000, and at Smith's death was worth between $9,000 and $10,000. The above is all the evidence that throws any light upon the relations of those parties, and their transactions, in regard to this land.

1. The question arises at the threshold of this controversy whether a case is made for the interposition of a court of equity. The bill cannot be regarded as calling

for the construction of the will, for that instrument needs no construction. Its terms are clear and unambiguous. No doubt can be raised as to its meaning. In the event of Mr. Smith's death before his wife's, the will, upon being probated, would have vested the absolute legal title in her.

If the bill be regarded as one for the specific performance of a contract made between Mr. Smith and Mrs. Owen, the obvious reply is that he performed his contract. He made the will, and it has been probated. Complainant claims that it is filed "for the specific performance of a devise of lands." But the devise was made. Smith did all he was asked or agreed to do. In consequence of her decease before his, the only question for determination is, has the title passed by the will to her heirs, or does it remain in his? If the devise lapsed upon her death, then the title is in defendants. If it did not lapse, then the title is in her heirs. It is a pure question of law, and the action of ejectment is the appropriate remedy.

The allegation in the bill that complainant "believes that, in the trial in a court of law, she would be hampered and limited in her proof by the strict rules of the common law," is not sufficient to warrant the interposition of the equity side of the court. The rules of evidence are the same in both. The complainant's remedy at law is complete and ample, and there she should have brought her suit. But, in order to save further litigation and expense, we will dispose of the case upon its merits.

2. The rule is conceded that a legacy or devise lapses upon the death of the legatee or devisee before the death of the testator. But complainant contends that this case does not fall within the rule; that the provision of this

will was not a gift, over which Smith retained control during his life; that it was a testamentary contract, made for a valuable consideration moving from the devisee, and irrevocable; that immediately upon its execution it vested in Mrs. Owen a present valuable property right; and that upon her death it descended to her heirs at law unimpaired.

Under this contention, it is pertinent to inquire into the consideration which moved the parties in this transaction, and controlled their action. It is apparent that the consideration of $2,000 expressed in the deed was not the real one, and that the real consideration was not pecuniary in its nature. The ordinary relation of debtor and creditor, growing out of the sale of property by one to another, did not exist. Their relations were intimate. They had evidently entered into a marriage contract, which, for some reason now unknown, Smith was not then ready to perform. There is no evidence of fraud, duress, or undue influence in the execution of the deed. It was her voluntary act, done, no doubt, because of the love and confidence she reposed in him, and of his promise to marry her. This conclusion is rendered certain by the testimony of her attorney that before the will was made he demanded of Smith that he should marry her, or reconvey the land to her. It is also very significant that her attorney, Judge Stacy, does not mention or intimate that there was any agreement between them for a definite pecuniary consideration. Smith afterwards married her, and there is nothing in the record to cast suspicion upon his dealings with her either before or after their marriage.

Now, considering that they were not married at the time the will was made, and that the deed was made for the consideration above mentioned, we have an explana-

tion of the terms of the devise. It does not recognize the existence of a pecuniary claim or demand, or that there would be one. She had become anxious lest he should die before their marriage, and thus deprive her of the property. He was willing to arrange it to her satisfaction. At her request, mutual wills were made. She became dissatisfied with this arrangement, and he gave her a contract to reconvey on her request. Again she became dissatisfied, and this was abandoned, and the will now under consideration was made, with which she was then, and ever after remained, satisfied.

The consideration for the deed was paid and satisfied by their subsequent marriage. This left her then with only such rights in the land as she had by virtue of their maritial relations aside from the will. He had fulfilled his contract with her. Their mutual agreement ·had been mutually performed, to the evident satisfaction and happiness of both. From that time, so far as this land was concerned, she had no legal claim against him except such as the law gives to a wife, and such as she would have had by this will if she had survived him. The will and the deed were not contemporaneous. When the latter was made, there was no thought of the former. The will does not state that the devise is made in consideration of the deed, or any consideration whatever, but only that it should be in full of all claims which she might have against him at his decease, whether in consideration of the purchase of said farm, for services, or otherwise. As we have already shown, the marriage destroyed all claims arising to her out of the deed of the farm, and there is no evidence of any other claims. It may well be doubted whether the mutual wills, the contract, and the will now under discussion, were intended by the parties as anything more than temporary arrangements until the consummation of the marriage. Be that as it may, we find noth-

ing in the terms of the will itself to indicate any intention upon his part, or any understanding between them, that the devise, in the event that he survived her, should go to her heirs. Nor is there anything in the extraneous proofs to indicate any such intention. Both lived upon the property until their deaths. He largely increased its value by his labor and means. Assuming that they understood the will to be in force after their marriage, the fair inference is that they intended that the survivor should have the property. There is no devise over in the event of her death, and no declaration by the testator that the devise should not lapse. In such case, the property devised descends to the heirs or residuary legatees of the testator. 2 Redf. Wills, 488, 491.

Granting that the will was made in consideration of the deed, and therefore irrevocable, still the devise lapsed. If a woman, in contemplation of marriage, deeds her property to her intended husband, and he thereupon executes a will devising it to her, and they subsequently marry, the result is to vest the title in him and his heirs forever if she dies first, and to revest the title in her and her heirs if he dies first. Nothing but the declaration of the parties, expressed in the deed or the will, will change this result. It cannot rest in parol. Id. 493, par. 9. The will must be given the construction which is apparent upon its face. Its effect cannot be changed by parol proof of what took place between the parties after the execution of the deed, and prior to the execution of the will. Such proof was incompetent.

The decree of the circuit court is affirmed, with the costs of both courts.

CHAMPLIN, C. J., MORSE and CAMPBELL, JJ., concurred. LONG, J., did not sit.