KEASEY v. ENGLES.

1. WILLS—CONTRACT TO MAKE JOINT AND MUTUAL WILL IRREVOCABLE.

It is contract to make joint and mutual will, and not will itself, that is irrevocable by survivor after death of one party to it.

2. SPECIFIC PERFORMANCE—WILLS.

Court of equity, under its fraud and trust jurisdiction, will decree specific performance of contract to make joint and mutual will after death of one party to it.

As to joint and mutual wills, see annotation in 33 A. L. R. 741; 43 A. L. R. 1024; 57 A. L. R. 608; 60 A. L. R. 627.

3. WILLS—ESTATE CONVEYED BY WILL, NOT CONTRACT TO MAKE WILL.

Estate is conveyed by will and not by contract to make it, and therefore no claim of vesting under joint and mutual will may be laid upon ground of its irrevocability.

4. SAME—JOINT AND MUTUAL WILL.

Estates are vested under joint and mutual will in same manner as under ordinary wills.

5. SAME—SPECIFIC PERFORMANCE—VESTED RIGHT.

It is only right of action to enforce contract to make joint and mutual will, if anything, which vests in beneficiary at death of one of testators.

6. SAME—VESTED ESTATE.

No estate vests in beneficiary under joint and mutual will until death of surviving party.

7. SAME—WHEN LEGACY LAPSES.

Generally, legatee's death prior to testator's death causes legacy to lapse.

8. SAME—JOINT AND MUTUAL WILL—DEATH OF LEGATEE.

Where husband and wife made joint and mutual will leaving legacy to daughter-in-law after death of survivor, her death prior to survivor's death caused legacy to lapse, and survivor was free to otherwise dispose of it.

Appeal from St. Joseph; Jacobs (Theo T.), J. Submitted April 6, 1932. (Docket No. 27, Calendar No. 36,323.) Decided June 6, 1932.

Bill by Seth C. Keasey, executor of the will of Emma G. Clapp, deceased, against E. C. Engles, executor of the will of Amanda E. Clapp, deceased, and others for specific performance of a contract to make joint will. Decree for defendants. Plaintiff appeals. Affirmed.

*Grant Sims,* for plaintiff.

*James T. Sloan* and *Harry C. Howard,* for defendants.

FEAD, J. March 15, 1928, Leverett A. Clapp and Amanda E. Clapp, husband and wife, each then close to ninety years of age, made a joint will providing, after payment of debts and charges:

"Upon the decease of either of us our entire real and personal estate is hereby bequeathed to the survivor.

"Upon the decease of such survivor, we do hereby give, devise and bequeath to our beloved daughter-in-law, Emma G. Clapp, our homestead property known as lot nine, in section 24, in Centerville, Michigan, and also all our furniture, wearing apparel, jewelry, and bric-a-brac of every name and nature in said residence property."

Then followed four bequests of money to relatives, and "the remainder of our estate we give to our loved daughter-in-law, Emma G. Clapp."

The will contained no gifts over or provision for devolution of the estate in case of death of any of the beneficiaries named in it.

Leverett died in 1929. His estate was probated and the residue assigned to Amanda, "to be finally disposed of at the death of said Amanda E. Clapp in accordance with the terms of their joint will." Emma died February 13, 1931, testate. February 23d Amanda executed a codicil to the joint will, revoking the legacy to Emma and making new devises. She died March 9, 1931.

The suit is for specific performance of contract to make the joint will, with prayer that Amanda's estate be distributed under it.

We will assume that the instrument is a joint and mutual will, executed in pursuance of contract between Leverett and Amanda Clapp, and that Emma, if living, would be entitled to specific performance of the contract and to take under the will. *Smith* v.

*Thompson,* 250 Mich. 302 (73 A. L. R. 1389); notes in 2 A. L. R. 1193, 33 A. L. R. 739, 73 A. L. R. 1395. The claim of her executor to like relief raises the questions, (1) whether a devisable interest in the estate vested in Emma during her lifetime; and (2) whether the legacy to her lapsed at her death.

Plaintiff contends that the will became irrevocable at the death of Leverett Clapp, and, therefore, at that time became operative as a testamentary conveyance and vested in Emma an interest in the estate which was not divested by her subsequent death.

Plaintiff relies upon an expression in *Carmichael* v. *Carmichael,* 72 Mich. 76 (1 L. R. A. 596, 16 Am. St. Rep. 528), to the effect that beneficiaries under contract to make a will were proper parties plaintiff, "as parties having vested interest in this real estate under the contract of their father and mother." The question of vesting was not raised in the case, and the expression cannot be given the force of authority thereon. Plaintiff also cites *Freeman* v. *Arscott,* 2 Ch. Div. (1930) 190. But in that case, in addition to being a testament, the joint will was a contract by which the estate of the survivor became subject to the terms of the will on the death of the other party, thereby, in effect, working a conveyance of the survivor's estate.

The rather common expression that a joint and mutual will is irrevocable by the survivor, after the death of one party to it, is not technically and legally correct. It is the contract to make the will, not the will itself, which is irrevocable. The contract is irrevocable because a court of equity, under its fraud and trust jurisdiction, will decree its specific performance. Such decree incidentally, although by indirection, enforces the will and so the

latter often is called irrevocable. *Doyle* v. *Fischer,* 183 Wis. 599 (198 N. W. 763, 33 A. L. R. 733); notes in 33 A. L. R. 739, 43 A. L. R. 1024, 57 A. L. R. 607, 60 A. L. R. 627; 28 R. C. L. p. 172; 40 Cyc. p. 2117. The distinction is important because the estate is conveyed by the will itself, not by the contract to make a will, and, consequently, no claim of vesting under the will can be laid upon the ground of its irrevocability. Estates are vested under a joint and mutual will in the same manner as under ordinary wills. It is only the right of action to enforce the contract, if anything, which vests in the beneficiary at the death of one of the testators.

There seems to be a paucity of authority upon the point. The only case we can find is *In re Lage,* 19 Fed. (2d) 153, which held, on a similar will, that no estate vested in the beneficiary until the death of the surviving party.

The most Emma Clapp or her representative could ask is that the contract between Leverett and Amanda to make the will be specifically enforced. The most the court could decree would be that the joint will be given effect at the death of Amanda as her will, according to its provisions and legal import. *Pittman* v. *Burr,* 79 Mich. 539. The will purported to give nothing to Emma Clapp at the death of Leverett. By its plain terms, the whole estate then devolved upon Amanda. The provision for Emma was not a gift *in præsenti* at death of Leverett, with merely the right of enjoyment postponed, as in *Hibler* v. *Hibler,* 104 Mich. 274, but the gift itself was deferred until the death of Amanda. Consequently no interest in the estate could vest in Emma until Amanda's death.

It is the general rule, obtaining also in this State, that the death of a legatee prior to the death of

testator causes the legacy to lapse. *Mann* v. *Hyde,* 71 Mich. 278; *Pittmann* v. *Burr, supra; In re Spier's Estate,* 224 Mich. 658; 40 Cyc. p. 1927. The statutory exception, 3 Comp. Laws 1929, § 15552, is not applicable here. Emma having predeceased Amanda, her legacy lapsed, her executor has no interest in the estate and cannot maintain the bill.

Decree for defendant affirmed, with costs.

CLARK, C. J., and McDONALD, POTTER, SHARPE, NORTH, WIEST, and BUTZEL, JJ., concurred.