[No. 35328. Department One. May 26, 1960.]

DOROTHY RUCHERT, as *Administratrix, Respondent*, v. E. N. BOYD, as *Executor, et al., Appellants.*[1]

[1]Reported in 352 P. (2d) 216.

*C. A. McCabe*, for appellants.

*Eugene T. Golden* and *Howard J. Martin*, for respondent.

DONWORTH, J.—This is an appeal from a decree granting specific performance of an oral contract between husband and wife to make mutual wills (which were jointly executed as one document) where the surviving spouse, subsequent to the death of the beneficiary named therein, made a later will expressly repudiating her mutual will.

The document, which is the basis of this controversy, reads as follows:

"WILL

"We, E. C. Ruchert, of the age of fifty-five years, and Anna Ruchert, of the age of Fifty-five years, husband and wife, of Pomeroy, Garfield County, the State of Washington, each being of sound and disposing mind and memory and not acting under duress, menace, fraud, or the undue influence of any person whomsoever, do make, publish and declare this our mutual Last Will and Testament, in the manner following, that is to say:

"FIRST. In event of the prior death of the testator, he hereby appoints the survivor, Anna Ruchert, executrix hereof, to act without bond or other security.

"SECOND. In event of the prior death of the testatrix, she hereby appoints the survivor, E. C. Ruchert, executor hereof, to act without bond or other security.

"THIRD. In event of the prior death of the testator, he gives, devises and bequeaths to the survivor, Anna Ruchert, all of his property, real, personal and mixed, of every kind and character and wheresoever situated, to have and to hold for and during her natural life, with remainder over to his nephew, Boyd Ruchert.

"FOURTH. In event of the prior death of the testatrix, she gives, devises and bequeaths to the survivor, E. C. Ruchert, all of her property, real, personal and mixed, of every kind and character and wheresoever situated, to have and to hold for and during his natural life, with remainder over to Boyd Ruchert.

"FIFTH. The survivor shall have the power to use, sell, invest and reinvest the personal property of said estate as if the same were his or her own without obligation for ac-

counting, the residue to pass to the said Boyd Ruchert upon the death of such survivor.

"Sixth. Upon the death of the survivor the entire estate of testator and testatrix shall pass to and vest in Boyd Ruchert, in fee simple.

"Seventh. Upon the death of the survivor Boyd Ruchert is hereby appointed Executor hereof, to act without bond or other security.

"Eighth. The testator and testatrix hereby severally revoke any former wills made by them or either of them.

"In Testimony Whereof, the testator and testatrix have hereunto set their hands and seals this 20th day of December, 1941.

"/s/ E. C. Ruchert (Seal)
"/s/ Anna Ruchert (Seal)"

(In the attestation clause the husband and wife declared the instrument to be their "mutual Last Will and Testament . . . of each thereof.")

In order to view this problem in its proper perspective, it is necessary to have in mind the situation of the spouses and their relationship to the parties to this action.

Since about 1920, E. C. Ruchert (referred to as the husband) and Anna Ruchert, his wife, had owned and operated a farm about eight miles from Pomeroy. They had no children, but they had reared from infancy in their home appellant Wilma Ruchert and Boyd Ruchert (sister and brother) who were a niece and a nephew of the husband. They had also reared as a part of their family appellant William Griffin, who was not related to either the husband or the wife.

The evidence shows that early in 1941, almost a year before the joint will was executed, an oral agreement of partnership was made by the husband, the wife, and the nephew whereby they agreed to operate the farm under the name of E. C. Ruchert Hereford Ranch and to share equally in the profits and losses. In view of the conclusion we have reached in deciding this case, we do not find it necessary to make further mention of the partnership transactions.

The nephew married respondent in November, 1942, and with his wife resided on the farm the rest of his life. (She

and her seven children still live there.) In the spring of 1943, E. C. Ruchert and his wife moved from the farm to a house they had purchased in Pomeroy. Thereafter, they ceased to be active in the operation of the farm, although they visited it frequently.

The husband died August 6, 1944, and his wife caused the joint will to be probated as his will. She was appointed executrix and administered the estate in the usual manner. At the conclusion thereof, she filed her final report and petition for distribution, which was approved by the court November 29, 1948. The court, in its decree of distribution, referred to the property as "the community interest of" decedent, and found that the widow and the nephew were "all of the heirs at law, next of kin and beneficiaries under the will of said deceased," and decreed as follows:

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED by the Court that all of the property of said estate hereinbefore described and otherwise be and the same is hereby distributed to Anna Ruchert for and during her natural life, with the remainder over to Boyd Ruchert."

As above stated, the nephew and his family lived on the farm and he managed it until he died intestate on October 19, 1953, being survived by his wife (the respondent herein) and their seven children. The administrator originally appointed by the court died and respondent was appointed as his successor. At the time of the trial, the nephew's estate was still undistributed.

Anna Ruchert, widow of E. C. Ruchert, executed a new will on October 9, 1956, which contained the following provision:

"FIFTH—I hereby revoke any former will by me made, especially and particularly the joint and mutual will of myself and my deceased husband, E. C. Ruchert, the consideration therefor having lapsed and the beneficiary thereunder, Boyd Ruchert, nephew of my said deceased husband and not related to me, having died."

She appointed E. N. Boyd (one of the appellants herein) as executor of her estate. Upon her death, on November 27, 1957, Mr. Boyd caused the will to be probated and his appointment as executor was confirmed. He has qualified and

has acted in that capacity since that date. He intends, unless legally restrained, to effect the distribution of the net estate of Anna Ruchert in accordance with the terms of the will of October 9, 1956. However, it was stipulated between counsel, during the trial, that no distribution to the heirs will be made until this court's decision in the present case becomes final.

It should be particularly noted that, subsequent to Anna's death and the termination of her life estate in her late husband's property, all the remainder thereof was distributed to respondent as administratrix of Boyd Ruchert's estate. In other words, the remainderman's interest in the E. C. Ruchert estate was delivered to his nephew's estate pursuant to the decree of distribution of November 29, 1948, entered in the uncle's probate proceeding. This interest had vested in the nephew upon his uncle's death in 1944.

The property involved in the present case consists of Anna's half of what was originally community property at the time of her husband's death. The question for our decision is whether the provisions of paragraph sixth of Anna's joint will lapsed upon the prior death of Boyd Ruchert, under RCW 11.12.110, which reads as follows:

"When any estate shall be devised or bequeathed to any child, grandchild, or other relative of the testator, and such devisee or legatee shall die before the testator, having lineal descendants, such descendants shall take the estate, real and personal, as such devisee or legatee would have done in case he had survived the testator. A spouse is not a relative under the provisions of this section."

The trial court held that there was no lapse under the statute, and entered a decree of specific performance directing the executor of Anna Ruchert's estate to account for all property in his hands and to transfer the same to respondent as administratrix of Boyd Ruchert's estate. The decree also enjoined all appellants from taking further proceedings in Anna Ruchert's estate and declared them to be trustees of the property involved for the benefit of respondent.

Appellants have prosecuted this appeal from that decree. The defendant, Pythian Home, at Vancouver, did not appear

in the trial court and was declared to be in default. It is not a party to this appeal.

This question, which is raised by appellants' last assignment of error (No. 10), has never before been presented to this court. Because the answer to that question is decisive of this case, we do not need to consider the other assignments.

In our consideration of this problem, we shall assume (without deciding) that Anna Ruchert, after accepting the benefits of her husband's will, was legally bound by contract not to revoke her mutual will of December 20, 1941, during the life of her husband's nephew, Boyd Ruchert. It is undisputed that Anna did not attempt to revoke her mutual will until *after* the nephew's death.

Based on this assumption, we think that it is immaterial whether or not Anna, after Boyd's death, revoked her mutual will. Even if she had never executed her will of October 9, 1956, and at her death, on November 27, 1957, her mutual will were still in full force and effect, would there have been any person then alive who was legally entitled to take Boyd's remainderman's interest in Anna's estate, in view of RCW 11.12.110, *supra*. Of course, if there were no one eligible to succeed to Boyd's interest in Anna's estate under her mutual will, then we can disregard her will of October 9, 1956, entirely.

In this posture of the case, we must consider the history and meaning of RCW 11.12.110. This statute was enacted in 1881, and has never been amended except to exclude spouses as relatives. At common law, all devises and bequests lapsed if the devisee or legatee predeceased the testator. The statute created an exception to this rule in the case of children, grandchildren, or other relatives of the testator.

This court construed this statute in the early case of *In re Renton's Estate*, 10 Wash. 533, 39 Pac. 145 (1895), where it was said:

"The interest of the appellants as children of Mrs. Renton in the will of the deceased, depends entirely upon the question whether or not their mother was a relative of the testa-

tor within the meaning of Gen. Stat., § 1467. This section reads as follows:

" 'When any estate shall be devised to any child, grandchild, or other relative of the testator, and such devisee shall die before the testator, leaving lineal descendants, such descendants shall take the estate, real and personal, as such devisee would have done in case he had survived the testator.'

"It is conceded by the appellants that courts have many times, and in fact almost uniformly, held that the 'relative' meant by this section does not include the wife, or any other relative by affinity, but embraces only relatives by consanguinity. Of course, decisions have been based upon the language of the several statutes passed upon, and the exact words used differ widely; but in none of them do we find a stronger intimation from the language itself that the relative mentioned is a relative by consanguinity than in our own. The use of the words 'child' and 'grandchild,' followed immediately by the word 'relative' would, we think, naturally lead one without technical knowledge of the subject to infer that the statute meant other relatives of the same kind. A child or grandchild is the natural devisee of a testator, and when the statute couples them with an allusion to other relatives, it leads the mind at once to argue that it is other relatives, to whom the testator would naturally have intended to devise his estate, that are meant."

See, also, *In re Sims' Estate*, 39 Wn. (2d) 288, 235 P. (2d) 204 (1951).

Respondent cites a recent decision of a Texas intermediate appellate court which supports her contention that her husband's interest in Anna's property vested in him prior to his death. The case of *Chadwick v. Bristow* (Tex. Civ. App.), 208 S. W. (2d) 888 (1948), involved facts substantially identical to those presented by the case at bar.

In the *Chadwick* case, *supra*, in 1928 Chadwick and his wife executed a joint and mutual will providing that, upon the death of either, all of their property, community and separate, would pass to the survivor for life and then to their children. Chadwick died in 1929, and his widow probated the instrument as his will and accepted the property interests devised to her under it. The same instrument was again probated as her will upon her death in 1944. One of their children, Ora Mae, who would have taken as a specific and

residuary devisee, had died childless in 1937, leaving a will providing that all her property should pass to her husband for life, with remainder over to her sister. The question presented was whether the gifts to Ora Mae under her parents' joint and mutual will, in so far as they represented devises by her mother, had lapsed on Ora Mae's death or had vested in her at the time of Mr. Chadwick's death. The court held that such devises vested in Ora Mae at the time her mother had probated the testamentary instrument as her husband's will and had accepted the property interests devised to her therein.

The case is noted in 48 Col. L. Rev. 288, 46 Mich. L. Rev. 1005, and 1 Vanderbilt L. Rev. 157. The article just cited in the Michigan Law Review makes the following comment:

"In reaching this result the court assumed its answer without discussion by holding that the will was intended to pass title to all the property of both spouses at the death of the first. There is no suggestion in the opinion as to how the court thought the instrument could be given such unusual effect. Instead, the argument of the court turned on whether the language of the instrument created vested or contingent interests in the remainder devisees at the death of the husband. The language of the will, and the rule of construction in favor of early vesting, were used to support the result. But this begs the whole question. The problem is not whether the remainder devisees took *vested* interests at the death of the husband. That this is so is indicated by the fact that apparently there was substantial agreement that their remainder interests in the property of the husband had vested at that time. *The problem was whether at this time they took any interest, vested or contingent, in the survivor's property.* Unless Texas recognizes a new type will which operates to create an estate in the testator's property before the death of the testator, the result of this case cannot be achieved by calling the instrument in question a will as to the survivor. It must have operated to make a testamentary disposition of Chadwick's property, and *simultaneously as an inter vivos conveyance of some description as to the property of Mrs. Chadwick. . . .*" (Italics ours.)

A very strong dissenting opinion was written in the *Chadwick* case, *supra*, and the later cases of *Amos v. Amos* (Tex. Civ. App.), 217 S. W. (2d) 902 (1949), and *Waller v. Gilli-*

*land* (Tex. Civ. App.), 231 S. W. (2d) 939 (1950), appear to reach results which are directly contrary to the holding in the *Chadwick* case.

We have found no other American cases in support of the *Chadwick* case, *supra. Keasey v. Engles,* 259 Mich. 178, 242 N. W. 878 (1932); *Estate of Schefe,* 261 Wis. 113, 52 N. W. (2d) 375 (1952), and *Bassett v. Salter,* 25 N. Y. S. (2d) 176 (1940), reach contrary results and, it seems to us, are correctly decided. We, therefore, are not persuaded to follow the rule adopted in the *Chadwick* case.

Thus, we need only consider the application of RCW 11-.12.110 to the facts of the case before us.

■ The plain language of our statute and its interpretation by this court in the *Renton Estate* case (which has never been overruled or modified in sixty-five years), compels us to hold that Boyd Ruchert was not a relative of Anna Ruchert and, therefore, the devise to him lapsed upon his death. Consequently, neither Boyd's surviving wife nor his children are eligible to take the estate or interest in Anna's property which Boyd himself would have received under Anna's mutual will if he had survived her.

Since neither respondent nor her children are eligible to take anything under Anna's mutual will (assuming that Anna's attempted revocation of the mutual will in 1956 was ineffective) because the devise and bequest to Boyd Ruchert lapsed upon his death in 1953, we must reverse the decree of the trial court with instructions to dismiss the action.

It is so ordered.

WEAVER, C. J., MALLERY, OTT, and HUNTER, JJ., concur.

---

August 10, 1960. Petition for rehearing denied.