## CHADWICK v. BRISTOW et al.
### No. 9641.

Court of Civil Appeals of Texas. Austin.
June 25, 1947.

Supplemental Opinion June 28, 1947.
Dissenting Opinion July 9, 1947.
Rehearing Denied July 9, 1947.

mother. Their children were two daughters, Ima D. and Ora Mae (Mrs. Clark Bristow) and a son, F. W. The will was executed July 31, 1928. After the death of the father in May 1929, upon application of the mother, it was probated, she was appointed and qualified as executrix thereof, accepted under the will and enjoyed its provisions until her death in 1944, when it was again probated as her will. Meantime, in 1937, Ora Mae (who never had any children) died, and her will gave all of her property to her husband for life, with remainder to her sister, Ima D. The suit was in form one in trespass to try title and was brought by F. W. against Clark and Ima D. (and Shoemake, not involved in the appeal); F. W. contending that the bequests to Ora Mae of the property embraced in Item Third (b) and (d) lapsed upon her death (before that of her mother), or in any event lapsed as to the mother's community half interest therein.

The trial was to the court upon stipulation of the facts, and the judgment denied F. W. any recovery, and he has appealed. As we gather from the brief his contentions may be stated substantially as follows:

1. The remainders created by the stated provisions were not vested ones, but contingent upon Ora Mae's survival of her mother.

2. Only the father's community interest vested upon his death, since the mother's community interest did not pass by the father's will.

3. If the remainders (as to all or ½ of the property) vested upon the death of the father, they so vested subject to the condition subsequent that Ora Mae survive her mother.

Willard McLaughlin and Leonard L. Gorin, by Leonard L. Gorin, both of Waco, for appellant.

E. M. Davis, of Brownwood, Sylvester Lewis and J. V. Hammett, both of Lampasas, by J. V. Hammett, of Lampasas, for appellees.

McCLENDON, Chief Justice.

Suit to construe the joint and mutual will of J. H. and S. A. Chadwick, to whom, for convenience, we refer as the father and

The pertinent portions of the will read:

"Third: The said J. M. Chadwick and S. A. Chadwick do hereby agree that the joint will as herein made shall not be changed unless both parties agree to the same and the execution of another will, or the changing of any provision of this will by one party shall operate as a revocation of this will as to the other party. In view of this agreement we hereby will, devise, and bequeath unto the survivor of us all of the property real or person— of which we

may die seized or possessed, except that set forth in Item Second hereof (not involved in the suit), and the survivor of us in accepting under this will shall be bound to carry out the provisions hereinafter and heretofore set forth.

"To have and to hold such property and *and* estate unto the survivor of us, for and during the natural life of such survivor.

"This bequest to include all property whether separate estate *or* either of us or our community estate. After the death of such survivor it is our will and the following described property shall pass to and vest in the following persons, to-wit:

"(a) To our daughter Ima D. Chadwick (specifically described lands). For her the said Ima D. Chadwick to have, hold, use and enjoy forever after the death of such survivor.

"(b) To E. M. Shoemake for and during his natural life—(Specifically described lands.) For him the said E. M. Shoemake to have, hold, use and enjoy for and during his natural life only, after the death of such survivor. At the death of said E. M. Shoemake this 325 acre tract shall revert to our estate and vest according to the residuary clause herein.

"(c) To our son F. W. Chadwick (specifically described lands). For him the said F. W. Chadwick to have, hold, use and enjoy forever after the death of such *sur* survivor.

"(d) To our daughter Ora Mae Bristow (specifically described lands). For her the said Ora Mae Bristow to have, hold, use and enjoy forever, after the death of such survivor.

"Fourth: All of the rest, residue and remainder of our estate, whether separate estate of either of us or our community estate, after the death of such survivor, we hereby will, devise and bequeath unto the said Ima D. Chadwick, Ora Mae Bristow, and F. W. Chadwick share and share alike, for them to have, hold, use and enjoy forever."

█ In ascertaining the intent of the author (the objective in construing all documents passing title to property) the primary rule is that: "The judicially ascertained in-

tent of a conveyor is normally determined by the language employed in the conveyance, read as an entirety and in the light of the circumstances of its formulation." III ALI Rest.Law of Prop. § 242. Rules of construction are applied only where the application of this rule "does not banish all doubt concerning the conclusions to be drawn from such language and circumstances." Three of these rules, generally recognized, are thus formulated in Sec. 243 of the III Restatement: those favoring the construction which (a) "conforms more closely to the intent commonly prevalent among conveyors similarly situated"; (b) "causes results which are more in accord with the public interest"; (c) "is legally more effective than it would be under any other possible construction." At least two of these rules (b and c) are applicable, and we think controlling here. It has always been held that the vesting of estates at the earliest possible time is in the public interest. The historical basis of this rule is given in III Restatement § 243, comment i, p. 1217. The modern basis of public interest for early vesting is that it reduces the "number of persons having interests in the affected thing and thus makes it easier to secure a conveyance of the ownership of such thing"; and that it "tends to reduce the uncertainties as to the created interest and hence results in a readier market for it," thus facilitating alienation. The public interest is also subserved by early indefeasibility. "So long as an interest remains defeasible (1) the uncertainty thereby injected makes such interest not readily marketable; (2) a transfer of complete property requires the joinder not only of the owner of such interest but also of the interest which may defeat it; (3) the present unrestricted enjoyment of the full value of the thing is postponed." Id. comment j, p. 1218. The applicability of rule (c) is obvious.

We think the following construction of the will is clear from the language employed. However, if there is any ambiguity in the language, this construction follows from application of the above rules.

█ The provisions of the will, which were mutual and reciprocal, expressly dis-

posed of the entire estate, separate and community, of both spouses, which, upon the death of the first spouse (father) and the probating of the will and acceptance thereunder of the other spouse, vested in the survivor (mother) as of the date of the death of the father the entire estate for life in the mother, with vested remainder over in the specifically named remaindermen. That only a life estate, in all the property, is given to the survivor could not be more clearly expressed than in item Third. The language in that item "after the death of such survivor * * * the * * * property shall pass to and vest in the following persons," that in item Third (b) "shall revert to our estate and vest according to the residuary clause herein," that in item Third (d) "To our daughter Ora Mae Bristow," and "For her the said Ora Mae Bristow, to hold, use and enjoy forever, after the death of such survivor," and that in item Fourth (residuary clause) "after the death of such survivor, we hereby will, etc. (to Ima D., Ora Mae and F. W.) for them to have, hold, use and enjoy forever," clearly import, under a practical unanimity of decision, an immediate indefeasible vesting, with postponement of use and enjoyment until after the death of the survivor. As early as 1853 our Supreme Court, speaking through Chief Justice Hemphill, in Bufford v. Holliman, 10 Tex. 560, 60 Am.Dec. 223, gave this construction to a will devising property to testator's wife for life and at her death to "become the property of my own children, as well as of Alfred, my wife's son." The court said:

"A vested remainder is defined to be an immediate right of present enjoyment or a present fixed right of future enjoyment. A grant of an estate to A for life, and, after his death, to B in fee, is a fixed right of future enjoyment in B, and is, consequently, a vested remainder. (4 Kent, 201.) It is a fixed interest, to take effect in possession after a particular estate is spent."

In Caples v. Ward, 107 Tex. 341, 179 S.W. 856, 857, the remainder was held vested and subject to execution, created by a residuary clause giving the property to the wife for life "with remainder over upon her death to our five children (naming them) share and share alike." The will also gave the wife unlimited power of disposition of the property with the concurrence of a majority of the children. It then provided that upon the death of the wife all of the property "shall be divided equally between all of my above-named five children then living, or their descendants" etc. Notwithstanding this right of alienation, and the final distribution clause to the "children then living, or their descendants," the remainder was held vested in the named children, and their interests in specific property subject to execution. Mr. Chief Justice Phillips, writing for the court, said: "A remainder is vested where there is a person in being who would have an immediate right to the possession upon the termination of the intermediate estate. It is an immediate right of present enjoyment, or a present right of future enjoyment, a fixed interest, with only the right of possession postponed until the ending of a particular estate. 4 Kent, 202; Bufford v. Holliman, 10 Tex. 560, 60 Am.Dec. 223. To use a common illustration of the books, where there is a grant of an estate to A for life, and, after his death, to B in fee, the remainder is a vested one, since the grant creates a present fixed interest, with the right of future enjoyment in B."

And further: "The law favors the vesting of estates at the earliest possible period, and will not construe a remainder as contingent where it can reasonably be taken as vested."

On all fours in principle with the instant case is Wagnon v. Wagnon, Tex.Civ.App., 16 S.W.2d 366, 367. In that case there were two identical wills executed by the spouses at the same time. The wife died first and the husband probated her will and accepted under it. The pertinent provision read: "I give to my husband * * * all the residue of my estate * * *, both personal and real of every description whatever, to use, possess and control as his own individual property so long as he may live and at his death it is my will that the title and possession of my property pass to my children and their legal heirs respectively, share and share alike."

There was a question whether the wills were joint and mutual, and it was necessary to remand the case upon that issue.

It was held that if they were not joint and mutual, only the wife's interest in the community passed. On the other hand: "If the wills in question were mutual and reciprocal and executed pursuant to agreement, though executed as separate instruments, the rights of the beneficiaries fixed thereby would be the same as if both had joined in a single joint and mutual instrument. 40 Cyc. 2110. Consequently, when R. M. Wagnon probated his wife's will, and accepted the benefits thereof, such contract between them became irrevocable, and the rights of the children, not only in their mother's estate, but in all the community then existing, became fixed and indefeasible, subject, of course, to R. M. Wagnon's right 'to use, possess and control, as his own individual property,' said property during his lifetime. Moore v. Moore, Tex.Civ.App., 198 S.W. 659; Larrabee v. Porter, supra [Tex.Civ.App., 166 S.W. 395]; Sherman v. Goodson's Heirs, Tex.Civ.App., 219 S.W. [839], 841. That is to say, if said wills were mutual and reciprocal, R. M. Wagnon, upon the probate of his first wife's will, became vested with only a life estate in the entire community property, with remainder to their children. The wills gave him no authority to sell or dispose of same, but only to use, possess, and control it as a life tenant."

Appellant cites the following cases in support of his contention that title did not vest until the death of the mother: In re Lage, D.C., 19 F.2d 153; Keasey v. Engles, 259 Mich. 178, 242 N.W. 878; Brown v. Brown, 101 Kan. 335, 166 P. 499.

In the Lage case par. 2 of the will gave the property absolutely to the survivor. Par. 6 provided that "The survivor of us does hereby give," etc., certain specific property to the named devisee. In the Michigan case [259 Mich. 178, 242 N.W. 879] the entire title was devised to the survivor. A further clause provided that "Upon the decease of such Survivor, We do hereby give * * * to" a named devisee specific property. In the Kansas case the will provided, to quote from the syllabus, "that their respective estates should be kept together as an entirety, and upon the death of either the survivor should take the entire estate with full power to invest it or to dispose of it to parties other than the beneficiaries, and that upon the death of the survivor the property should vest in trustees who were authorized to invest, change, or convert the property of the estate, and to manage and control it for a period of 15 years, after which time it was to be distributed equally among living children and the heirs of the body of deceased children." It is manifest that the provisions in each of these wills were essentially different from that at bar; and even if it be conceded that each case was correctly decided, none supports appellant's contention.

There is nothing in the language of the will to support appellant's contention that if the remainder in Ora Mae was vested, it was nevertheless defeasible upon her death prior to that of her mother. The will contains no condition subsequent, either express or implied, which would operate as a defeasance of the devises.

■ It is also plain that the mother's acceptance under the will created an estoppel against her to claim any interest in the property other than the life estate created by the will. She was clearly put to an election whether she would accept what the will gave her (a life estate in all the property) or her community half interest in the fee. See Dakan v. Dakan, 125 Tex. 305, 83 S.W.2d 620; Nye v. Bradford, 144 Tex. 618, 193 S.W.2d 165. "A recurrent situation which requires an election on the part of the devisee or legatee is where the will of husband or wife disposes of property which belongs to both spouses, at the same time making provision for the other as compensation for the loss of his or her rights or ownership. The surviving spouse, being entitled under the will to benefits which are inconsistent with his or her rights as allowed by law, is required to elect or choose between accepting or renouncing the provisions of the will." 44 Tex.Jur., pp. 865, 866.

■ Appellant's contention that the fee to the wife's half of the community did not vest under the husband's will is predicated upon the holding and certain expressions in the opinion in Jones v. State, Tex.Com. App., 5 S.W.2d 973, 974, an unadopted

opinion of the Commission. The question in that case was whether a state inheritance tax was due upon specific property "of value approximately one-half of the total community property" bequeathed by the husband to the wife "in lieu of her community and dower interest in all other property and with request that she accept the same in lieu of her community and dower interest." It was held that this provision of the will, and the wife's acceptance thereunder, merely constituted a partition of the community property; and no tax was due since the wife's interest in the community was entirely independent of the will, was not subject to an inheritance tax upon the husband's estate, and what she got under the will was only substantially of the value of what she would have gotten had she repudiated the will. For the purposes of taxation the question was the net value of what the wife got under the will, that is the gross value of the specific property less what it cost her (what she had to give up) to get it. There being no substantial net value, manifestly there was no taxable bequest. An entirely different situation would have been presented had it appeared that the value of what the wife got was substantially greater than that of what she gave up to get it. The decision is obviously correct and obviously not in point here.

The trial court's judgment is affirmed.

HUGHES, J., dissents.

HUGHES, Justice (dissenting).

Mrs. Ora Mae Chadwick Bristow was in being at the death of her father, and no impediment existed at such time to prevent her from taking the remainder in the lands devised, to the extent of her father's interest therein which vested upon his death. So far, I am in full accord with the result reached in the majority opinion. I respectfully dissent, however, from the court's holding with respect to the construction of and effect to be given the will of the mother, Mrs. S. A. Chadwick.

The general rule is that the death of a legatee or devisee prior to that of the testator results in a lapse of the bequest or devise in the absence of any other method of devolution or substitutionary provisions contained in the will. 44 Tex.Jur., 805. An exception to this rule is created by Art. 8295, Vernon's Ann.Civ.St., in favor of lineal descendants of the testator. This statutory exception carefully limits its benefits to those who survive the testator. This statute has been construed, under the rule of implied exclusion, to exclude devisees or legatees not coming within its terms. Leatherwood v. Stephens, Tex.Com. App., 24 S.W.2d 819.

In Bomar v. Carstairs, 124 Tex. 492, 79 S.W.2d 841, 844 (Com.App. Opinion adopted by Sup.Ct.), is found the nearest approach to a solution of the question here presented. In that case J. H. Nail and his daughter, Elizabeth Carstairs, became embroiled in a bitter controversy over their affairs, and in the settlement of which Nail made the following agreement:

"El Paso, Texas, June 9, 1921.
"Mrs. Elizabeth Carstairs,
"El Paso, Texas.
"Dear Daughter:
"I am handing you herewith a copy of my will which has been re-drawn and which is to be executed by me as soon as I reach Fort Worth.
"In this will you are left one-fourth (¼) part of my estate after a special legacy to my son, James H. Nail, Jr.
"As you have released me of the payment of the five thousand ($5,000.00) dollars, which some time ago I obligated myself to you for, and to allay all friction between us, I assure this will shall be carried out as far as you and Celia's children are concerned, and at my death you will receive one-fourth (¼) part of my estate.
"Your father,
"J. H. Nail."

Elizabeth Carstairs died childless May 3, 1927, but left a will with her husband as sole beneficiary. After the death of Elizabeth Carstairs, J. H. Nail made a new will in which she was omitted. The husband, Robert Carstairs, contended that under the agreement, above set forth, that a present irrevocable one-fourth of the father's estate vested in his wife, as it existed at his death, which passed to him

under the will of his (Carstairs) wife. In denying this contention the court held:

"The bequest was personal to Elizabeth —a transaction between father and daughter, to which the husband Carstairs was not a party and to which he is not shown to have assented or in which he agreed to do or forbear doing anything. The father carried out his promise 'not to disinherit' Elizabeth, and had she survived him, she would have inherited the one-fourth of his estate just as she would have inherited had the father died intestate.

"There is nothing in the instrument indicating any intention upon the father's part or any understanding between them that the devise, in case he survived her, should go to her husband or any other stranger in blood. There is no devise over, but the promise, personal to Elizabeth, is that 'the will shall be carried out so far as you and Celia's children are concerned, and at my death you (meaning Elizabeth—not her husband or any one else) will receive one-fourth part of my estate.' If the will had not been changed, the husband would have profited nothing, because the wife's prior death terminated the contract and the bequest lapsed. Coleman v. Jackson, Tex.Civ.App., 126 S.W. 1178. The will was referred to and became part of the contract.

"On the other hand, if Elizabeth had left a descendant who survived the testator, the descendant would under the statute (Art. 8295), have taken the part bequeathed to Elizabeth, and any pretended testamentary disposition thereof by her foreclosing the descendant's such right would have been futile."

I see no valid reason for not applying the principles of this decision to the case here. The devise to Ora Mae Chadwick Bristow was no less personal than the contract to make a will in favor of Elizabeth Carstairs. In neither case was there any devise over in the event of the death of the beneficiary.

It adds nothing to say that the contract, embodied in the Chadwick will, is irrevocable. No question of revocation or attempted revocation is present. The contract had been faithfully performed. A will after the death of a testator is likewise irrevocable, yet the will is subject to many rules of law, one of which is that a devise lapses should the devisee pre-decease the testator. A devisee or legatee may refuse to accept under the will. The purpose for which a bequest is made may be non-existent at the testator's death, or at such time the object of his bounty may not exist, or a will may contain a void or unlawful devise or bequest, yet in all such instances the devise or bequest lapses. 44 Tex.Jur., 805. That these and other rules pertaining to wills should be discarded merely because the will is based on a contract is inconceivable.

The product of such a contract is nothing more nor less than a will and should be subject to all the rules of law pertaining thereto.

A careful reading of Larrabee v. Porter, Tex.Civ.App., 166 S.W. 395, writ refused, will disclose that this doctrine of irrevocability relates only to the right of the survivor to change the will. In Ellsworth v. Aldrich, Tex.Civ.App., 295 S.W. 206, 209, writ refused, the court, after referring to the general rule of the ambulatory nature of a will, had this to say about the decision in Larrabee v. Porter, and other similar cases: "There is a seeming exception to that rule adopted in cases involving rights claimed under mutual wills. Examples are found in Larrabee v. Porter, Tex.Civ.App., 166 S.W. 395; Sherman v. Goodson['s Heirs], Tex.Civ.App., 219 S.W. 839, and Heller v. Heller, Tex.Civ.App., 233 S.W. 870. In two of those cases the probate proceedings were, in the district court on appeal, consolidated, by agreement, with suits in equity. In the last case no probate proceedings were involved. In each of those cases it was held that after the decease of one of the parties to a joint and mutual will the survivor, having elected to take the benefits of the original testament, could not by a revocation destroy rights which the instrument was designed to create. The ruling was based upon the principle of estoppel and was to prevent the perpetration of a fraud."

No branch of the law should have more stability than the law of wills. Changes

should be by legislative enactment only. To overcome a harsh rule of the common law our legislature enacted Art. 8295 to prevent the lapse of a bequest or devise under certain conditions which otherwise would occur by reason of the death of the legatee or devisee. Our Supreme Court, as above noted, has held that all others not named in the statute are excluded. Appellant is not one of the class referred to in the statute. He is bound by the common law rule.

While the deceased daughter, Mrs. Bristow, had no children, the majority opinion would cut off any children she may have had—in direct violation of Art. 8295 and in the very face of the pronouncement of the Supreme Court in Bomar v. Carstairs, supra, that any pretended testamentary disposition foreclosing such children's right to take under the statute would have been futile.

Wagnon v. Wagnon, Tex.Civ.App., 16 S. W.2d 366, writ refused, cited by the majority, is not in point. The prior death of a legatee or devisee was not involved. Furthermore, what the court there said concerning the vesting of title under a joint and mutual will was pure dictum, the court having held that no joint and mutual will had been established.

The court's holding as to the intention of the parties to the will involved is fully answered in the Bomar v. Carstairs case.

In my opinion, the devise to Mrs. Bristow, under the will of her mother was personal and lapsed by reason of her prior death.

### Supplemental Opinion.

McCLENDON, Chief Justice.

In order to clarify the points in which we differ from our Brother Associate Justice HUGHES, we file this supplemental opinion.

There is no disagreement upon the point that if the mother's half interest in the community property did not vest under the will of the father, and acceptance thereunder by the mother, then the devise to Ora Mae as to that half interest lapsed, since she predeceased her mother and left no descendants.

The point upon which we do differ is our holding in the original opinion that the entire estate of both spouses vested under the husband's will. The language of the will in this regard is plain, explicit and not open to construction. If there had been no joint will, but only the will of the father attempting to dispose of the entire estate of both spouses, the result as to all property of both those estates would have been the same. The mother would have been put to an election and her acceptance under the will would have vested the entire property of both estates as of the date of the father's death. No subsequent will of the mother could have altered or defeated such vesting. The subsequent probating of the mother's will could not operate upon any of such property, as the entire title vested under the father's will. Of course, no property acquired by her subsequently to the death of the father, passed by the father's will. Such property (if any) did pass under her will. Whether the contract embodied in the mutual will embraced also such after acquired property is a question with which we are not here concerned.

We do not regard the case of Bomar v. Carstairs, 124 Tex. 492, 79 S.W.2d 841, as having any material bearing upon the holdings which control our decision.

The will in that case was executed in compliance with a contract between father and daughter, in which the former agreed to devise to the latter her inheritable share in his estate. The daughter died childless, and thereafter the father made a new will revoking the earlier one. The holdings in the case were in substance: that the power of the father to revoke the contractual will could not be litigated in the probate court, consequently the last will was entitled to be probated, and revoked the contractual will; that even had there been no revocation of the contractual will and had it been admitted to probate, the devises to the daughter would have lapsed since she predeceased the father and left no descendants; and that the contract with the daughter was personal to her, had been

fully complied with by the father, and therefore was not breached by him by his revocation thereof after her death; and that her devisees acquired no interest under the contract, since it was personal to her and therefore unassignable.

We do not agree with the statement in the dissenting opinion that the holding in the Wagnon case "concerning the vesting of title under a joint and mutual will was pure dictum, the court having held that no joint and mutual will had been established." The court did hold that the record upon that appeal did not show that the wills were mutual, and upon that issue the cause was remanded for a new trial. The opinion constituted a direction to the trial court as to how title to the property was to be adjudged in case it developed upon a new trial that the wills were joint and mutual. In no sense was the holding dictum, but was an adjudication of a question essential to a proper disposition of the case upon a new trial and was therefore res judicata of that issue upon such new trial. Sutherland v. Friedenbloom, Tex.Civ.App., 200 S.W. 1099, is directly in point and supports this view, if support were necessary.

HUGHES, J., dissenting.

HUGHES, Justice (dissenting).

The holding in the Wagnon case, referred to in my dissent as dictum, considered as a guide to the lower court, is not, as pointed out by Chief Justice McCLENDON, in the court's supplemental opinion, dictum. I do suggest, however, that the rule there announced was not fully nor adequately examined. Nevertheless, such holding would be followed but for my firm conviction that the later opinion of the Supreme Court in Bomar v. Carstairs has superseded the rule laid down in the Wagnon case and has announced controlling principles of law which this court is bound to follow. Bomar v. Carstairs as well as Leatherwood v. Stephens, relied upon in my dissent, have recently been cited with approval by the Supreme Court in Logan v. Thomason, 202 S.W.2d 212.

The correctness of the illustration given in the supplemental opinion, i. e. the will of the father alone attempting to dispose of the estate of both spouses, may be conceded, but its application is not perceived. Here the father and mother each executed a will. Neither attempted to dispose of the property of the other. As to this there can be no question. 44 Tex. Jur., p. 823. In legal effect there are two wills, by which each maker disposes of his or her own property.

The court also poses, but does not answer, the question of whether the contract embodied in the mutual will embraces property acquired by the mother subsequent to the death of the father. This but emphasizes the danger of the departure made by the court in its original opinion. If the mother's will is treated as a will, construed as a will, and subjected to all the rules of law applicable to wills, certainty of the law is maintained and new and novel questions avoided.

The court in its supplemental opinion says the opinion in Bomar v. Carstairs has no material bearing upon the case, yet summarizes the holdings therein, in part: " * * * that the contract with the daughter was personal to her, had been fully complied with by the father, and therefore was not breached by him by his revocation thereof after her death; and that her devisees acquired no interest under the contract, since it was personal to her and therefore unassignable."

The materiality of this holding is, to me, not only obvious, but controlling.