F. W. CHADWICK V. CLARK BRISTOW ET AL.

No. A-1387. Decided February 18, 1948.
Rehearing overruled March 17, 1948.
(208 S. W., 2d Series, 888.)

482

*Willard McLaughlin* and *Leonard L. Gorin*, both of Waco, for petitioner.

*E. M. Davis*, of Brownwood, *Sylvester Lewis* and *J. V. Hammett*, both of Lampasas, for respondents.

MR. JUSTICE SIMPSON delivered the opinion of the Court.

J. M. Chadwick and S. A. Chadwick, husband and wife, made a joint will in 1928, which contained these among other provisions:

"THIRD: The said J. M. Chadwick and S. A. Chadwick do hereby agree that the joint will as herein made shall not be changed unless both parties agree to the same and the execution of another will, or the changing of any provision of this will by one party shall operate as a revocation of this will as to the other party. In view of this agreement we hereby will, devise, and bequeath unto the survivor of us all of the property real or person of which we may die seized or possessed, except that set forth in Item Second hereof [not involved in the suit], and the survivor of us in accepting under this will shall be bound to carry out the provisions hereinafter and heretofore set forth.

"To have and to hold such property and and estate unto the survivor of us, for and during the natural life of such survivor.

"This bequest to include all property whether separate estate or either of us or our community estate. After the death of such survivor it is our will and the following described property shall pass to and vest in the following persons, to-wit:

"(a) to our daughter Ima D. Chadwick [describing 380 acres]. For her the said Ima D. Chadwick to have, hold, use and enjoy forever after the death of such survivor.

"(b) To E. M. Shoemake for and during his natural life [describing 325 acres]. For him the said E. M. Shoemake, to have, hold use and enjoy for and during his natural life only, after the death of such survivor. At the death of said E. M. Shoemake this 325 acre tract shall revert to our estate and vest according to the residuary clause herein.

"(c) To our son F. W. Chadwick [describing 272 acres]. For

him the said F. W. Chadwick to have, hold, use and enjoy forever after the death of such survivor.

"(d) To our daughter Ora May Bristow [describing 323 acres]. For her the said Ora. May Bristow, to have hold use and enjoy forever, after the death of such survivor.

"FOURTH : All of the rest, residue and remainder of our estate, whether separate estate of either of us or our community estate, after the death of such survivor, we hereby will, devise and bequeath unto the said Irma D. Chadwick, Ora May Bristow, and F. W. Chadwick share and share alike, for them to have hold use and enjoy forever."

J. M. Chadwick died in 1929. Mrs. Chadwick had the will probated, and qualified as executrix under it. She accepted the will's terms and conditions, and took possession of and collected rents from all the property described in the will until her death in 1944, when the will was again admitted to probate. In the meantime, in 1937 her daughter Ora Mae, wife of Clark Bristow, had died childless and had left her property by will to her husband for life, with the remainder to her sister, Irma D.

After Mrs. Chadwick's death, her son, F. W. Chadwick, filed this suit in trespass to try title against Clark Bristow and Ima D. Chadwick for the lands described in paragraph Third (b) and (d), seeking to have the will of his mother and father construed thus:

1. The remainder to Ora Mae did not become a vested eseate either as to her father's or her mother's interest in the community (all lands in suit were community property), but was contingent upon Ora Mae's surviving her mother. And since she did not survive, the legacy to her had lapsed.

2. In any event, only the father's community interest should be held to vest upon his death, since the mother's interest did not pass by the father's will.

3. The will did not put his mother to an election.

The district court rendered judgment against Chadwick, which the Court of Civil Appeals affirmed by a divived court. 204 S. W. (2d) 65.

The will is unambiguous and its provisions complete. The

facts are stipulated. The will quite plainly stated that the survivor should get all the property (with certain exceptions not material here) belonging to both for the survivor's life, with remainders to the named legatees. F. W. Chadwick insists that his siter Ora Mae would only have acquired those remainders devised to her had she survived her mother. He reasons that since Ora Mae had predeceased her mother, leaving no descendants, the legacy to her lapsed when she died, and there was no surviving interest in the elder Chadwicks' estates for Ora Mae's husband and, after him, her sister to take. The common law rule that a gift by will lapses when the legatee predeceases the testator was changed by Article 8295, R. S., so as to preserve the legacy for the benefit of surviving children and descendants only, but not, as in this case, for the benefit of a surviving husband and sister. Bomar v. Carstairs, 124 Texas 492, 79 S. W. (2d) 841; Lightfoot v. Poindexter (Tex. Civ. App.) 199 S. W. 1152, error refused.

So it is obvious that if no estate vested in Ora Mae by virtue of the probating of her father's will, there was nothing for her to devise. In support of his contention that this was so, Chadwick relies most confidently upon Bomar v. Carstairs, supra. There, one Nail for a valuable consideration promised his daughter, Mrs. Elizabeth Carstairs, that he would not disinherit her, and made a will which included her. She died without children or descendants, but left a surviving husband. Nail then changed his will and omitted the bequest of Mrs. Carstairs. Subsequently, Nail died, and Carstairs sued for the interest in Nail's estate which Carstairs' wife would have taken if she had outlived her father and he had not changed his will. The case turned upon the point that all the daughter had was a valid promise from her father to include her in his will, and that "no present interest in the estate was conveyed—only the promise that she would not be disinherited." 124 Texas 492, 501, 79 S. W. (2d) 841, 846.

The Carstairs case does not provide an answer to the problems posed by Chadwick. It was a case of construing a contract to make a will,—a promise by a father not to disinherit a daughter. Here, there is not presented any such a question, but the problem of construing a will itself, one which became fully operative and effectually binding upon the survivor who probated it.

The joint will, by the recitals in paragraph Third, shows clearly that it was executed in furtherance of an agreement

and was contractual in its nature. Upon the death of J. M. Chadwick and the probate of the will by his wife, accompanied by her admittedly accepting under it, the dispositions in the will become absolutely binding upon her. Moore v. Moore (Tex. Civ. App.) 198 S. W. 659, error refused; Sherman v. Goodson's Heirs (Tex. Civ. App) 219 S. W. 839, error refused; Nye v. Bradford, 144 Texas 618, 193 S. W. (2d) 165, 169 A. L. R. 1.

The majority of the Court of Civil Appeals correctly concluded that the principles stated in Wagnon v. Wagnon (Tex. Civ. App.) 16 S. W. (2d) 366, error refused, will govern here. In the Wagnon case, a husband and wife had executed separate wills in identical language, leaving to each other "my estate" for life, with the remainder to their children. The trial court concluded that the wills were mutual and reciprocal, but because of an error in letting in evidence, the judgment below was reversed by the Court of Civil Appeals, which ruled that if upon retrial the wills were found to be mutual and reciprocal, the surviving husband upon the probate of his wife's will became vested with a life estate only in the *entire community property*, with remainder to their children; but if not, the husband took a life estate in only half the community, that is, his wife's half, and title to his half remained in him unaffected by the wills.

The Wagnon case announced no new law but, rather, followed a principle in the construction of wills which has long been embraced by both the English and American courts. See Larrabee v. Porter (Tex. Civ. App.) 166 S. W. 395, error refused, and the authorities there collected. Also see Moore v. Moore, supra; Sherman v. Goodson's Heirs, supra; Rossetti v. Benavides (Tex. Civ. App.) 195 S. W. 208, error refused. The Charwick will presents even a stronger case for the appilcation of this rule than the Wagnon wills. The elder Chadwicks had most unmistakably stated that the survivor should take "* * * all of the property * * * of which we may die seized or possessed, * * * and the survivor of us in accepting under this will shall be bound to carry out the provisions thereinafter and heretofore set forth.. To have and to hold such property and estate unto the survivor of us, for and during the natural life of such survivor." Although the will thus plainly stated that it devised all the property which both testators might own at their death, the quoted language is significantly followed by a reiteration of that intention: "This bequest to include all property whether separate estate or (of) either of us or our community estate."

We approve the following analysis from the majority opinion of the Court of Civil Appeals:

"The language in that item 'after the death of such survivor * * * the * * * property shall pass to and vest in the following persons,' that in item Third (b) 'shall revert to our estate and vest according to the residuary clause herein,' that in item Third (d) 'To our daughter Ora Mae Bristow,' and 'For her the said Ora Mae Bristow, to hold, use and enjoy forever, after the death of such survivor,' and that in item Fourth (residuary clause) 'after the death of such survivor, we hereby will, etc. (to Ima D., Ora Mae and F. W.) for them to have, hold, use and enjoy forever,' clearly import, under a practical unanimity of decision, an immediate indefeasible vesting, with postponement of use and enjoyment until after the death of the survivor." 204 S. W. (2d) 65, 68.

■ We also agree with the majority of the Court of Civil Appeals that the will does not require construing but readily speaks for itself. Obviously, the testators had jointly, mutually, and reciprocally contracted with each other that all the property of both should go to the survivor for life, with the remainders as stated. Upon the probate of the will by Mrs. Chadwick and her acceptance under it, the titles became so vested.

And these titles were vested in this manner for yet another reason, which was thus correctly stated by the majority of the Court of Civil Appeals:

"It is also plain that the mother's acceptance under the will created an estoppel against her to claim any interest in the property other than the life estate created by the will. She was clearly put to an election whether she would accept what the will gave her (a life estate in all the property) or her community half interest in the fee. See Dakan v. Dakan, 125 Tex. 305, 83 S. W. (2d) 620; Nye v. Bradford, 144 Tex. 618, 193 S. W. (2d) 165. 'A recurrent situation which requires an election on the part of the devisee or legatee is where the will of husband or wife disposes of property which belongs to both spouses, at the same time making provision for the other as compensation for the loss of his or her rights or ownership. The surviving spouse, being entitled under the will to benefits which are inconsistent with his or her rights as allowed by law, is required to elect or choose between accepting or renouncing the provisions of the will.' 44 Tex. Jur., pp. 865, 866." 204 S. W. (2d) 65, 69.

■■ The further conclusion must follow that since Mrs. S. A. Chadwick had only an estate for life in the property after she probated her husband's will, the remainders were then vested in the designated remaindermen. It is well settled that a remainder is vested where there is a person in being who would have an immediate right to the possession upon the termination of the intermediate estate. For a case almost precisely in point, see Bufford v. Holliman, 10 Texas 560, 60 Am. Dec. 223. Ora Mae was such a "person in being" as this principle contemplates, and the remainder must be considered to have vested in her as of the time of her father's death. This vesting at the earliest possible time is uniformly held to be in the public interest and is favored by the law, which will not construe a remainder as contingent where it can reasonably be taken as vested. Bufford v. Holliman, supra; Caples v. Ward, 107 Texas 341, 179 S. W. 856; Giraud v. Crockett (Tex. Civ. App.) 142 S. W. (2d) 243, error refused; Restatement, Property sec. 243 (b), Comments h and i. Not only can the remainder to Ora Mae be reasonably taken as vested and not contingent, but it appears clear to us that the record presents no substantial basis for any other conclusion. Accordingly, as to the 323 acres willed to Ora Mae subject to the life estate in favor of her mother, as well as to one-third of the Chadwick property covered by the "residuary clause," to use the language of the will, we conclude that Ora Mae became presently and absolutely invested with an estate when her mother probated and accepted under her father's will, and that this estate in turn passed to Ora Mae's legatees.

Nothing in the will reasonably militates against these conclusions. Language like this from paragraph Third, "the survivor of us in accepting under this will shall be bound to carry out (its) provisions," and this language from paragraph Fourth, "all of the * * * remainder of our estate, * * * after the death of such survivor, we hereby will" to the named devisees, cannot be construed to mean that the survivor took any estate greater than one for life. What was meant was manifestly that the remaindermen's right of possession, while indefeasible, would not arise until the survivor's death, not that the title to the remainders themselves did not vest sooner. There were provisions for the appointment of executors upon the death of the survivor. These, it is argued, would be meaningless if the testators intended that the survivor should have no estate. The appointment of these executors may well have been designed to aid in the orderly distribution of the residuary estate devised by paragraph Fourth. Other serviceable offices which

might be performed by these executors can readily be conceived.

Of course, the portions of the will adverted to must be taken along with all of its other provisions; and when so viewed, they comprise a harmonious and familiar pattern of testamentary disposition under which a husband and wife leave all their holdings to the survivor for life, with remainders over to their children or others. The majority of the Court of Civil Appeals correctly so construed the will.

The judgments of the Court of Civil Appeals and the trial court are affirmed.

Opinion delivered February 18, 1948.

Rehearing overruled March 17, 1948.