Mrs. Opal RIEDEL, Appellant,

v.

Mrs. Ella Lee KERLICK, et vir, et al.,
Appellees.

No. 649.

Court of Civil Appeals of Texas,
Corpus Christi.

Nov. 24, 1971.

Rehearing Denied Dec. 16, 1971.

Errol John Dietze, Cuero, for appellant.

Tom Cheatham, Wiley L. Cheatham, Cuero, for appellees.

## OPINION

NYE, Chief Justice.

This is a suit to construe a joint and mutual will. Herman Riedel and his wife Caroline Riedel made a joint and mutual will on December 4, 1931. On July 6, 1951, Herman Riedel died, leaving surviving him, his wife, Caroline and their only child, Harlan C. Riedel. The wife Caroline Riedel probated the joint will on July 26, 1951, and qualified as independent executrix of the estate. About nine years later, on November 6, 1960, Harlan C. Riedel, the only child born of the marriage of Herman and Caroline, died testate in Dallas, leaving all of his estate to his wife

Opal Blair Riedel. She qualified as independent executrix of his estate. The son, Harlan and his wife Opal had no children born or adopted. On December 18, 1967, Caroline Riedel died. She left the joint and mutual will that she and her husband executed in 1931. Opal Blair Riedel qualified as administratrix with will annexed of the estate of Caroline Riedel. The collateral heirs of Herman and Caroline Riedel brought this suit against Opal Blair Riedel.

The case was tried before the court without a jury. The court found that the 1931 joint will of Herman and Caroline was the last will and testament of the said Caroline Riedel. The trial court further found that the said will failed to designate any surviving beneficiary and therefore the legacy bequeathed to Harlan C. Riedel failed and lapsed. The court ordered and decreed that the estate of Caroline Riedel should be distributed in accordance with the laws of descent and distribution of the State of Texas, under the direction of the County Court of DeWitt County sitting in probate. Mrs. Opal Blair Riedel, the surviving wife of Harlan C. Riedel, appeals.

The sole question before this Court is whether or note the interest devised and bequeathed under the joint and mutual will to Harlan C. Riedel, constituted a vested or contingent remainder interest. If the interest was contingent upon the son Harlan C. Riedel outliving his mother, then his interest lapsed and the collateral heirs would be entitled to the remaining interest of the estate. If Harlan C. Riedel's interest vested at the time of the death of his father and the probating of the will by his mother, then his interest vested and would go to his wife under his will.

The evidence showed that the testators lived on a farm all their lives and had very little business dealings. The joint and mutual will executed in 1931 was the last will written by them. Their only child was their son, Harlan C. Riedel. Before his death, he was an oil executive who lived in Dallas, Texas. He had handled his mother's and father's financial affairs and took

care of them during their entire life, particularly in their later years. The mother lived for sixteen years after the death of the father and seven years after the death of her son. She never remarried nor did she ever attempt to revoke the original joint will that she and her husband made. With this evidentiary background in mind, we copy the entire will:

"The State of ⎱ KNOW ALL
Texas County of ⎰ MEN BY THESE
De Witt ⎰ PRESENTS:

That we, Herman Riedel and Caroline Riedel, husband and wife, of the State and County aforesaid, being of sound and disposing mind and memory, do make and publish this *our last joint will and testament,* hereby revoking all wills heretofore by us, or either of us, made.

We hereby direct that all of our just debts and funeral expenses be paid out of our estate by the hereinafter named executor as soon as it can be conveniently done, and further direct that a double tombstone be erected at our last resting place to cost about Five Hundred Dollars ($500.00).

It is the will of each of us that after the death of one all of our property, real, personal and mixed, (except as hereinafter stated) shall go to the survivor, *to manage, use, control and dispose of as to him or her seems right and proper, without interference by any one.* The exception hereto is a tract of two parcels of land conveyed to Herman Riedel by Anton Ibrom and wife by deed dated May 1st, 1913, duly recorded in Vol. 73, on page 169, of the deed records of said County of De Witt. I, the said Caroline Riedel, paid for this property with my own money and it is my separate estate, and I here direct that said two parcels of land, (if not disposed of during my lifetime) shall be sold for the best price obtainable and one-half of the proceeds shall be turned over to St. Paul's Lutheran Church of Yorktown,

Texas, the other one-half to go with our other estate. I, Herman Riedel, agree to the foregoing bequest to the Church and admit that said two parcels of land are the separate property of my said wife, the deed was made in my name through error.

In the event one of us *re-marries* the property then in possession of the survivor *shall be divided into two equal parts, one part shall go to our son Harlan C. Riedel, the other part* (one-half) *to be the property of the survivor.*

It is the will of each of us, and we here so direct, that the survivor be appointed executor (executrix) of this our last joint will and testament; that no bond or security be required of the executor (executrix) and that no proceedings be had in the Probate Court in the matter of our estate other than to file and prove this will and to file an inventory and appraisement of our estate and a list of claims.

*After both of us have departed this life all of our estate of every description shall go to and vest in fee simple in our son Harlan C. Riedel, without remainder to any one.* He is to be sole executor of this our last joint will after our passing, no bond or security shall be required of him as executor and no proceedings shall be had in the Probate Court other than above stated.

In witness whereof we here sign our names to this our last joint will and testament at Yorktown, Texas, this 4th day of December, A.D. 1931.

SS Herman Riedel
SS Caroline Riedel

Signed, published and declared by the said Herman Riedel and Caroline Riedel as and for their last joint will and testament in our presence, and we, at their request, in their presence and in the presence of each other subscribe our names hereto as attesting witnesses, each being above the age of fourteen years,

on this the 4th day of December A.D. 1931.

A. J. Braunig, witness
O. A. Schroeter, witness
Chas. Mertins, witness"
(Emphasis supplied)

The appellant makes four contentions. (1) That the testators intended that their only son and heir receive a vested estate in the remaining property belonging to his mother and father. Appellant reasons that (2) the phrase in the will that grants the son a vested interest is not made contingent by the subsequent language employed in the will by the testators. Appellant argues (3) that the will clearly granted the surviving spouse a life estate (subject to a possible converted fee interest of one half on remarriage) with the right of disposition. (4) Finally appellant says that since the testator's son was a person in being at the time the will was made and was living prior to the death of the father and alive prior to the probating and the election by the mother to take under the joint will, the son's interest vested on the happening of these events.

■ The cardinal rule to be followed in construing a will is to seek, ascertain and enforce the intent of the testators. If the intention of the testators is not clearly expressed by the particular language used in the will, the intent may be found by looking to all of the provisions of the will as a whole and to the circumstances surrounding its execution. Darragh v. Barmore, 242 S.W. 714 (Tex.Comm'n App.1922); Hassell v. Frey, 131 Tex. 578, 117 S.W.2d 413 (Tex.Sup.1938); Wheat v. Hill, 317 S.W.2d 575 (Tex.Civ.App.—San Antonio 1958, wr. ref.).

We believe that there is a very clear intent expressed by the testators in the will that their son Harlan should have some vested estate from his parents. He was their only natural lineal heir. The mother and father by will contracted, that in the event that the survivor should remarry, the property in possession of the survivor should be divided in two equal parts, "one part shall go to our son Harlan C. Riedel, the other part (one-half) to be the property of the survivor." Upon the happening of this event the son would have had an immediate fee interest in one-half of the property remaining. This shows that the testators were concerned in assuring that their son should receive an interest in their property. The contractual obligation in the joint and mutual will, clearly evidences the intent of the testators to establish a life estate in the community property, with the proviso that should the survivor remarry, the son should immediately receive his one-half in fee simple. See Heller v. Heller, 233 S.W. 870 (Tex.Civ.App.—Galveston 1921). In the event of no remarriage, the son was to have the property remaining upon the death of the survivor.

■ The manifest intention of the testator will control in determining questions with reference to the vesting of title. The law favors the vesting of estates, and it is the duty of a court not only so to construe the will as creating a vested estate, if possible, but also to adopt that construction which will permit the earliest vesting of title. See 44 Tex.Jur., Wills, § 172, p. 737.

The rule defining a vested remainder has been repeated many times. In 1853 the Supreme Court of Texas in Bufford v. Holliman, 10 Texas Reports 560, defined a vested remainder as ". . . an immediate right of present enjoyment or a present fixed right of future enjoyment. A grant of an estate to A for life, and, after his death, to B in fee, is a fixed right of future enjoyment in B, and is, consequently, a vested remainder. 4 Kent, 201." To the same effect is the rule laid down by the Supreme Court in Guilliams v. Koonsman, 154 Tex. 401, 279 S.W.2d 579 (Tex. Sup.1955). There the Court recognized that the law favors the vesting of estates at the earliest possible period. The courts will not construe a remainder as contingent, where it can reasonably be taken as vested. The Court went on to say: "If

the conditional element is incorporated into the description of, or into the gift to the remainder-man, then the remainder is contingent; but if, after words giving a vested interest, a clause is added divesting it, the remainder is vested."

Appellees contend that the clause in the will "without remainder to any one" as found in the last paragraph, makes the devise to the son a contingent remainder. The quoted words follow the phrase giving the vested interest to the son. The will stated: "After both of us have departed this life all of our estate of every description shall go to and vest in fee simple in our son Harlan C. Riedel, without remainder to any one." The questionable phrase ("without remainder to any one") was not incorporated into the description or into the gift to the remainderman (Harlan C. Riedel). It followed the giving of the vested interest. Such language does not make the remainder contingent. Guilliams v. Koonsman, supra.

Appellees contend that the estate granted to Caroline in the joint will was not a life estate but a fee simple absolute because of the qualifying language "without interference by any one". Appellees further argue that because Caroline had the right to dispose of the entire estate, this converted the wife's life estate into a fee.

A life estate is created where the language of the will manifests an intention on the part of the testator to pass to the first taker a right to possess, use or enjoy property during the period of his life. A devise of a life estate to the first taker, succeeded by a devise of a remainder to the ultimate taker, is accomplished by a provision which in effect expresses a gift of property to A during his life and thereafter to B. The life tenant may have full power of disposition without restraint. Such power is not inconsistent with the estate for life.

In Edds v. Mitchell, 143 Tex. 307, 184 S.W.2d 823 (Tex.Sup.1945) the Supreme Court said:

"  .  .  .  Important also is the rule established by the decisions in this state and in the great majority of the other states that the added full power of disposition given to the life tenant, like that given in Item Four of the will, does not raise the life estate to a fee. (citing authorities) The power of disposition is not an estate. It is merely authority derived from the will to dispose of the fee. (citing authorities) It is not inconsistent with or repugnant to the estate for life. (citing authorities) It is not repugnant to the remainder, but when exercised, it defeats the remainder in the property sold or conveyed. (citing authorities)"

To the same effect are Bridges v. First National Bank in Dallas, 430 S.W.2d 376 (Tex.Civ.App.—Dallas 1968, n. r. e.) and Calvert v. Thompson, 339 S.W.2d 685 (Tex.Civ.App.—Austin 1960, wr. ref.). The San Antonio Court said in Reilly v. Huff, 335 S.W.2d 275 (Tex.Civ.App.—San Antonio 1960):

"It is well settled in this State that where a will gives to the life tenant full power of sale and disposition of the estate, the fact that the power may be exercised by the life tenant does not prevent the vesting of the remainder at the time of the testator's death, if at that time there is a person in being who would have a right to possession upon the termination of the intermediate estate  .  .  .  ."

To the same effect is Caples v. Ward, 107 Tex. 341, 179 S.W. 856 (Tex.Sup.1915). The Court said:

"  .  .  .  The remainder is not made contingent by uncertainty as to the amount of the estate remaining undisposed of at the expiration of the life estate, but by uncertainty as to the persons who are to take  .  .  .  ."

Appellant relies strongly upon Amos v. Amos, 217 S.W.2d 902 (Tex.Civ.App.—Dallas 1949, n. r. e.) as controlling. In the

Amos case a joint and mutual will was executed. It stated: ". . . It is our will and desire and the will and desire of each of us, that the survivor of us shall at the death of the other, become the owner in *fee simple* of any and all property real or personal, money, life insurance, and any and all other property or effects of which we or either of us may die possessed or in which we or either of us may have any interest at the time of the death of the first to die. *And the fee simple title is by this instrument fully vested in such survivor.*" In Item 2 of their will they stated: "It is our special will and desire and the will and desire of each of us that whatever, property, real, personal, or mixed, of any, and every description which shall or may still remain in the hands of the survivor of us or in which such survivor of us may have an interest at the time of the death of such survivor, shall go to Everett Amos, and the title to any such property shall be and is hereby vested in the said Everett Amos in fee simple. *But this bequest shall in no wise interfere with the provisions in Item Number 1, of this our last will and testament.*" (emphasis supplied) Mrs. S. L. Amos, testatrix, died first and her husband probated the will and qualified as executor. About two years after the death of Mrs. Amos, Everett Amos, the son of testator by a former marriage (the person mentioned in Item 2 of the will) died intestate, leaving surviving him his wife and an adopted child. Later E. B. Amos remarried and subsequently executed another will in which he gave his new wife the real estate involved in this suit, a part of the estate remaining in his hands, and gave the other portion of his estate to others. E. B. Amos died and his independent executrix probated the second will. The second wife instituted this suit against the widow of Everett Amos and the adopted child in the form of a trespass to try title. The controversy hinged upon the joint and mutual will of E. B. Amos and his first wife, for determination of whether or not at the time of Everett Amos' death, Everett had a present vested indefeasible interest in the land so that such interest survived him and on the death of E. B. Amos, passed on to his (Everett Amos') heirs. The Court held that since the devise under Item 1 of the will granted E. B. Amos an absolute fee simple title to the property, the gift over to Everett had lapsed on the death of Everett. In other words, the gift to Everett had not vested so as to pass title to his heirs at the time of the death of E. B. Amos.

■ The appellees contend that there exists a lapsed legacy because the son, Harlan C. Riedel predeceased his mother Caroline. Appellees rely on the general rule of law that if a person who is named as devisee or legatee in a will dies during the lifetime of the testator, the gift to him is deemed to have failed or lapsed, unless (1) the will contains a substitutionary provision, or (2) the devisee or legatee was a descendant of the testator and was survived by lineal descendants. Appellees say that since the son died during the lifetime of his mother with no descendants nor any substitutionary provision in the will, his estate lapsed. But this is not the situation here. The son's interest vested in him before he died. Where a will disposes of the property of both parties by contract and the writing creates an estate in remainder to take effect at the termination of the life estate in the survivor, the latter is held to be bound thereby. 44 Tex.Jur., Wills, § 125, p. 669. A remainder is vested where there is a person in being who would have an immediate right to the possession upon the termination of the intermediate estate. It is an immediate right of present enjoyment, or a present right of future enjoyment, with only the right of possession postponed until the ending of a particular estate. 96 C.J.S. Wills § 921, p. 375.

One of the leading cases in Texas discussed this problem. In Bufford v. Holliman, 10 Texas 560, the Court construed the will where the wife was bequeathed certain property during her natural life and "at her death to 'become the property of my own children, as well as of Alfred,

my wife's son.' " There all the children survived the testator but some died prior to the termination of the life estate. Some of the deceased children left heirs or devisees. Others had assigned their interest to strangers. The Court, after defining a vested remainder stated that "The law favors the construction that remainders are vested at the death of the testator, so as not to cut off the heirs of the remaindermen who may happen to die before the death of the tenant for life . . .."

Appellants cite Waller v. Gilliland, 231 S.W.2d 939 (Tex.Civ.App.—Amarillo 1950, wr. ref.) as directly controlling the construction of the subject will. The facts of the Waller case are not at all similar to the facts in the case before us. The holding of the Amarillo Court is not inconsistent with our holding herein. In the Waller case L. Lantz and Mrs. M. J. Lantz were husband and wife. They executed a joint and reciprocal will. No child or children were born to their marriage. The will provided for the survivor to have a life estate with the remainder over to certain legatees and devisees. The paramount issue determined by the appellate court was the proper disposition to be made of the two bequests made to persons who had *predeceased* the testators in death. One bequest was to the children of Mrs. Sarah Matlock all of whom were dead at the time the joint will was executed. The other was to Louis Waller who died without issue before the death of either L. Lantz or Mrs. M. J. Lantz. The joint will did not contain any substitutionary provision. The property involved was all community property. The Court held that the bequests made to the children of Sarah Matlock and to Louis Waller were void and therefore lapsed. Since the bequests under consideration had lapsed, the lapsed portion of the community estate was not therefore disposed of by the joint will. Therefore the lapsed property became the property of Mrs. M. J. Lantz upon the death of her husband L. Lantz. It belonged to Mrs. M. J. Lantz as community surviving wife at the time of her death and since it was not

disposed of in any manner by the terms of the joint will, it therefore descended to her heirs under the law of descent and distribution.

The facts in Chadwick v. Bristow, 146 Tex. 481, 208 S.W.2d 888, Supreme Court affirming Tex.Civ.App.—Austin 204 S.W.2d 65, are remarkably similar to the case before us. The law is controlling. There the Court was called upon to construe a joint and mutual will of the Chadwicks, husband and wife. The will devised to the survivor an estate for life and expressly included all property of both testators. It then provided ". . . After the death of such survivor it is our will and the following described property shall pass to and vest in the following persons, to-wit:" (here followed several specific devises, one being to a daughter Ora Mae). Each specific devise concluded with the words, "to have, hold, use and enjoy forever after the death of such survivor . . ." The husband died and his wife survived. She probated the will and qualified as executrix. Their daughter Ora Mae who married Bristow, died childless after the father, but before her mother, leaving her estate by will to her husband Bristow. After the death of Mrs. Chadwick, F. W. Chadwick, their son, brought the suit against Bristow asserting that the remainder in the joint will to Ora Mae did not become a vested remainder but was contingent upon Ora Mae surviving her mother. The Court held that upon the death of the father and upon the probating of the will and acceptance thereunder by the mother, the entire estate vested for life in the survivor (mother) as of the day of the death of the father, with a vested remainder over in the specifically named remaindermen, including Ora Mae. The Court held that the mother received only a life estate and that Ora Mae had a vested remainder which by will went to her husband Bristow. The Court said:

" . . . 'after the death of such survivor, we hereby will, etc. (to Ima D., *Ora Mae* and F. W.) for them to have,

hold, use and enjoy forever,' clearly import, under a practical unanimity of decision, an immediate indefeasible vesting, with postponement of use and enjoyment until after the death of the survivor." Citing authorities.

The Supreme Court went on to say that obviously, the testators had jointly, mutually and reciprocally contracted with each other that all the property of both should go to the survivor for life, with the remainders as stated. Upon the probate of the will by Mrs. Chadwick and her acceptance under it, the titles became so vested. The Court reasoned:

"The further conclusion must follow that since Mrs. S. A. Chadwick had only an estate for life in the property after she probated her husband's will, the remainders were then vested in the designated remaindermen. *It is well settled that a remainder is vested where there is a person in being who would have an immediate right to the possession upon the termination of the intermediate estate.* [Citing Bufford v. Holliman] . . .." (emphasis supplied.)

██ It is therefore clear to us that Harlan C. Riedel was a person in being and alive at the time of the execution of the will as well as at the time his father died. His mother Caroline elected to take under the will. When she, as survivor, probated the will, she became bound by contract to the terms of the joint will when she made this election. This had the effect of vesting the estate remaining, in her son. Since the intermediate estate to Caroline was a life estate (subject to a possible converted fee interest of one-half on remarriage) and not a fee (even though she had the right to dispose it), Harlan C. Riedel had an interest that vested upon the death of his father and upon the probating of the will by his mother.

We have reviewed all of appellees' cited cases. They concern either the death of the devisee or legatee prior to the death of a single testator or in the case of a joint will, the death of the devisee or legatee prior to the death of both testators. Other authorities they cite have facts that show that the intermediate estate was an estate in fee and not a life estate, or that the remainderman's estate was made contingent by the use of particular language in the will such as that which is defined in Guilliams v. Koonsman, supra.

We hold that the estate remaining of Herman and Caroline Riedel, vested in their son Harlan under the terms of their joint and mutual will. His vested remainder went by his will to his wife, the appellant.

The judgment is here rendered in favor of Opal Blair Riedel.

Reversed and rendered.

SHARPE, J., not participating.

## OPINION ON MOTION FOR REHEARING

Appellees have filed their motion for rehearing complaining principally, that certain factual statements relative to the intent of the testators were considered by this Court in arriving at its opinion. Appellees argue that these facts are not supported by any pleadings and they are not substantiated by any facts proved in the evidence. The appellees admit that such statements were taken from appellant's brief. These statements were not challenged in any way by appellees in their reply brief.

██ Rule 419 Texas Rules of Civil Procedure provides that any statement made by an appellant in his original brief as to the facts or the record may be accepted by the court as correct unless the same has been challenged by the opposing party. Since no challenge was made by appellees, this court accepts as correct the factual statements made by appellant in her brief. City of Houston v. Lakewood Estates, Inc.,

429 S.W.2d 938 (Tex.Civ.App.—Houston 1st 1968, n. r. e.) ; Rule 419 T.R.C.P.

We have carefully considered appellees' motion for rehearing and the authorities cited therein. The motion for rehearing is overruled.

SHARPE, J., not participating.