**William Staford FULBRIGHT et al.,**
**Appellants,**

v.

**R. Sam CULBERTSON et al., Appellees.**

**No. 16924.**

Court of Civil Appeals of Texas.

Fort Worth.

May 24, 1968.

Rehearing Denied June 28, 1968.

Davis, Callaway & Marshall, and Clyde M. Marshall, Jr., Fort Worth, for appellants.

Charles Remy Tabor, Irving, McGown, Godfrey, Decker & Courtney, and Kent D. Kibbie, Fort Worth, for appellees.

## OPINION

MASSEY, Chief Justice.

Though interrelated there are actually two distinguishable actions involved between the parties to the appeal, the FIRST CASE being one where the dispute is between William Staford Fulbright as against R. Sam Culbertson (judgment in which we affirm), and the SECOND CASE being one where the dispute is between Raymond E. Ford and Fulbright as against C. M. & Associates, Inc., Charles E. Mills, and Culbertson (judgment in which we reverse and remand). We will treat them separately to avoid confusion.

### FIRST CASE

Fulbright brought action against Culbertson primarily to establish an interest in real estate and/or the proceeds from sale thereof, with ancillary relief. Judgment of the court was against him. Secondarily, the action was for damages resulting from the conversion of a building belonging to Fulbright. Judgment of the court was for him on this count, but the amount of the judgment was unsatisfactory.

As applied to the primary objective of Fulbright, and as applied to realty in which he claimed to have had an interest before he met Culbertson, it was asserted that as applied to some thirty (30) lots in the real estate subdivision known as Staford Heights (record title to which was acquired by Culbertson under deed of November 13, 1964 from LaCasa Development Corporation), the interest and title received by Culbertson was burdened by Fulbright's interest theretofore existent. Fulbright contended that his interest in this real estate continued to be equitably vested pursuant to agreement between himself and Culbertson. According to him the agreement was "that I would develop it out (the lots in the subdivision), sell it, and the money would be paid back to the bank and to Mr. Culbertson and myself for the money we were out, and the balance would be split fifty-fifty."

According to Culbertson there was no such agreement and that Fulbright had no more than the privilege of selling lots for him (in common with any other real estate dealer) for a 5% commission (though Ful-

bright never sold any of the lots for him), with the tacit permission of Culbertson to continue to operate from his building on one of the 30 lots.

The case on appeal exhibits an example of a situation where two persons have entered into a "relationship" without any clearly defined understanding of either as to duties, if any, of one to the other, or rights, if any, of one against the other.

Fulbright's suit seems to be founded on a theory that there was a contractual relation between himself and Culbertson, and in the alternative—in whole or in part—that there existed a quasi contractual relationship, with attendant actionable obligations.

The land which became the Staford Heights subdivision had belonged to Fulbright and his wife prior to September of 1962. In that month there were some 49 lots in the subdivision, the whole of which was deeded to Dynamic Development Corporation. Effected was a contract between Fulbright and the corporation which enabled Fulbright to continue or institute promotional and sales activities to his profit, with what may be considered an option to repurchase such lots as remained unsold up to September 30, 1964. As this termination date neared Fulbright found himself in financial difficulties. He was in dire need of $7,500.00 to discharge personal obligations incurred pursuant to sales or contracts to sell involving seven (7) lots in the subdivision.

Simplified for purpose of avoiding confusion we outline events culminating in Culbertson's receiving deed to the 30 lots. Three other persons besides Fulbright and Culbertson entered into a relationship with them, under tentative intention that Culbertson and two others would invest $10,-000.00 each—making a total of $30,000.00—and, as applied to the remainder of unsold lots in the Staford Heights subdivision (which will be taken as 30 in number) would

arrange for a newly formed corporation, to be called the LaCasa Development Corporation, to take the title. Fulbright's immediate need was for $7,500.00. An additional amount would be required to clear the title and interest of Dynamic Development Corporation in and to the remaining 30 lots. Culbertson advanced the $7,500.00 under the impression that it would be credited against his $10,000.00 investment. The LaCasa Development Corporation was created and chartered. Everyone "in sight" (including Fulbright) signed a note to one Baertich for $15,000.00, whereby that amount was secured. Consideration afforded by the loan thus obtained, and with additional cash supplied by Culbertson, enabled LaCasa Development Corporation to receive title from Dynamic. Simultaneously, or about the same time, it became obvious that no one was going to invest any money except Culbertson, whose $7,500.00 was already out of his hands and not to be recovered. At that stage, apparently with the consent of everyone, title was taken to the 30 lots by Culbertson, pursuant to deed to him from LaCasa on November 13, 1964. Attendant to such transaction Culbertson invested his additional cash and individually assumed the indebtedness of the note to Baertich.

Of interest to be noted is the fact that under Fulbright's testimony he would have possessed a 20% interest in the 30 lots if the persons other than Culbertson had each put up $10,000.00 as originally agreed. According to him such performance would have made a five way partnership and, as applied to the 30 lots in Staford Heights he would have a 20% ownership therein and to the profits to be derived therefrom, resulting because of his promise to develop the subdivision and sell the lots. With the investment money paid back plus all indebtedness, and incidental expenses, etc., each party would be entitled to 20% of the net profits—he (Fulbright) being one entitled to one of the 20% shares. As result of everyone dropping out except Culbertson

it was Fulbright's theory, and indeed he testified that Culbertson had expressly agreed, that his percentage interest in partnership property and percentage share in the net profits rose to 50%.

From the time Culbertson took the deed in November of 1964 the relationship between himself and Fulbright seems to have been amicable up until about the middle of May, 1965. At that time Fulbright's father brought a suit against Culbertson, apparently upon a matter wholly unrelated to the action before us. One result thereof was Culbertson's decision to sever all and every form of relationship with Fulbright. He so informed Fulbright and went to the premises where the building used by Fulbright was located and changed the locks at the doors thereof. Fulbright was excluded from those of the 30 lots to which Culbertson had received deed. He was denied any right to deal with reference thereto in any respect. Culbertson refused any accounting upon any transaction thereafter conducted by him with reference to any of the remaining lots and denied that Fulbright was entitled to anything. The subsequent suit of Fulbright was one consequence.

■ It was the conclusion of the trial court that Fulbright would not be entitled to establish any right, title and interest on the theory of partnership. We are not in doubt that in such respect the decision of such court should not be disturbed in view of the state of the evidence.

Fulbright advances the further proposition that it was not incumbent upon him to show the existence of a technical partnership to recover his interest in the land under a theory of constructive trust. He asserts that all that was required to prima facie establish his right was proof that the parties agreed to jointly acquire the properties pursuant to a confidential relationship existing between them, that pursuant to such joint venture and efforts the property was acquired in the name of one of them,

and that such title holder is now disputing the trust thus constructively created in his name. Fulbright cites the case of Gaines v. Hamman, 358 S.W.2d 557 (Tex.Sup., 1962). There a geologist and a lease broker entered into an agreement whereby the geologist located a likely oil property which was acquired in the broker's name with his funds, under an oral covenant that when sold the profits, if any, were to be divided after the broker's recoupment of his expenses. The Supreme Court pointed out that the confidential relationship and joint acquisition pursuant to reliance on the agreement to participate together were the controlling factors, expressly stating that it was not necessary to reiterate the verbal agreement with respect to each separate property transaction, nor to have an agreement to share losses, and that a constructive trust could not be defeated because the broker alone was to pay all expenses, subject to recoupment. We do not believe the cited case would have application here.

Gaines v. Hamman, supra, was a summary judgment case wherein the question to be resolved was whether a fact issue had been raised entitling the geologist, as plaintiff, to take his claim to a jury. That claim was for an interest in realty, $\frac{1}{8}$th interest in and to the $\frac{7}{8}$th working interest in a certain lease, as the ascertainable "profit" the geologist was entitled to receive upon complete consummation of the transaction. Here there was a trial on the merits and decision was against Fulbright. In Gaines v. Hamman the consideration moving from the geologist to the lease broker occurred antecedent to execution of the deed taken in the latter's name. Here the personal acts of performance on the part of Fulbright which he claimed as the basis of right to receive compensating consideration on the part of Culbertson were to take place subsequent to the time title was, or was to be, taken in Culbertson's name though his promise to perform antedated such. Furthermore, it does not appear, under Fulbright's testimony that he would ever become entitled to receive any title to realty. Construable

from the evidence was that the whole of what he might become entitled to was a title and interest in and to "profits", clearly contemplated to be personalty, i. e. in the form of money or its equivalent.

■■■ Transactions culminating in the deeding of the property to Culbertson in and for consideration emitting from him in exchange for the deed—would,—insofar as any consideration to be deemed as delivered to him by Fulbright—properly be treated as a promised consideration inducing Culbertson's action. As such there is no doubt that the Statute of Frauds would foreclose proof by Fulbright of his asserted right in the property purchased. Where the contribution of the one party amounts to mere consideration for the contract of the other, and nothing more, this is not enough to take the case out of the Statute of Frauds. In such circumstances there is furthermore no doubt that any trust relationship which might be treated as arisen would amount to an express trust. The Texas Trust Act would inhibit the imposition of an express trust on the property.

In no sense would we consider that Fulbright could be entitled to make of his case one for the recovery of an interest in real estate on the theory of constructive trust predicated upon what he claims to have been the working arrangement performable as consideration after title was taken in Culbertson's name. Rather would his case be one in which he would be limited and obliged to seek a judgment *in personam* as applied to damages he might claim to have sustained through Culbertson's wrongful severance of their relationship, or, as applied to a right of restitution, a repayment which would make him whole as to a loss sustained. However, Fulbright had no contract which gave him the right to conduct sale or sales of any particular real estate parcel which Culbertson desired to have sold, nor which gave him the right to continue to sell any realty. He presented no

evidence in proper demonstration of loss as to which he might have sought restitution. Furthermore, our interpretation of Fulbright's prayer for relief is that he sought establishment of title and interest in and to realty as same existed on date there was a severance of his relationship with Culbertson, and for profits realized from the sale of part of the realty after such date predicated upon his prior establishment of an interest in the title. It does not appear that he was claiming any money to have been owed by Culbertson on the date of his ouster.

■ To be separately considered, however, is Fulbright's contention that the title originally taken in the name of Culbertson was taken in trust for him as applied to the interest he theretofore possessed, and that as applied thereto the deed was intended to be a mortgage.

There having been no debt that Culbertson could have foreclosed against Fulbright (directly or indirectly) construction of the instrument of deed as a mortgage of the property by Fulbright is not possible. First Baptist Church of Ft. Worth v. Bible Baptist Sem., 347 S.W.2d 587 (Tex.Sup., 1961); McMurry v. Mercer, 73 S.W.2d 1087 (Dallas Tex.Civ.App., 1934, error refused).

■ It is to be remembered that title was delivered by LaCasa Development Corporation. Reception of title by LaCasa and subsequent conveyance by it to Culbertson seems to have been the extent of LaCasa's function after it had been chartered. We note the dispute of the parties relative to LaCasa's absence as a party to the suit and the contention by Culbertson that the question of whether the deed should be construed as a mortgage is an improper inquiry for that reason and because, in view of provisions of the Texas Business Corporation Act, the presumption arose that the deed to Culbertson was the act of LaCasa and not the act of Fulbright. We agree with the contention of Culbertson, but furthermore believe—and hold—that Ful-

bright would not be entitled to prevail if our conclusion had been to the contrary.

Fulbright's evidence was that when Culbertson became interested the Fulbright interest was predicated upon approximately $18,000.00 of the original amount he had invested, which he stood to lose on a foreclosure by Dynamic Development. He hoped to prevent such a loss and also preserve hope of future profits to be made from sales by prevailing upon Culbertson to invest. Fulbright's theory was that if his interest was not a 50% interest in the title, subject to indebtedness, it would be a percentum measurable by the proportion his $18,000.00 would bear to a total computed by adding it to the gross investment of Culbertson.

■ To obtain a finding that a deed was intended as a mortgage is the burden of him who so asserts. In the instant case the finding must necessarily be considered as having been made against the assertion, with the result that the instrument remains the deed it purports to be. The points on appeal are directed to the contention that such a finding would be against the great weight and preponderance of the evidence, if indeed, as also contended, the evidence is not such as should compel a finding to the contrary. Being of the opinion that the facts underlying judgment had adequate support and were not against the great weight and preponderance of the evidence Fulbright would not be entitled to prevail assuming the point be reached where a factor controlling entry of judgment would be the state of the evidence. The trial court was correct in refusing an accounting for profits realized from subsequent sale of the parcels of realty in which Fulbright claimed an interest, obligation so to do being dependent upon antecedent decision in accord with Fulbright's contentions. Here the decision was against him.

Two other real estate tracts comprised property in which Fulbright claimed an interest for substantially those same reasons (other than upon the equitable mortgage theory) that he claimed rights in and to the 30 lots in Staford Heights. The reasons given in the discussion thereupon, or in any event most of them, would have identical effect as applied thereto. The court's judgment denying Fulbright's claim as applied to the additional tracts should not be disturbed.

■ Several points on appeal present complaint because of the improper admission of evidence or the reception of evidence which was improper to be considered in the adjudication of issues essential to proper judgment. Trial was to the court without a jury and in such a case it is presumed that the trial court did not consider improper evidence and that the rendition of judgment was based upon competent evidence where the record contained evidence sufficient to support the judgment. It is true that where the court has made findings of fact and conclusions of law and it appears therefrom that the adjudication was necessarily predicated upon inadmissible evidence the existence of reversible error is apparent. Here the trial court made and filed such findings and conclusions, but it is not made to appear therefrom that the judgment was necessarily predicated upon the evidence of which complaint is made. Furthermore the statement of facts exhibits competent evidence sufficient to support the judgment. The points of error presenting the complaint are overruled.

### Fulbright's Converted Building

■ Upon severance of all relationships between Culbertson and Fulbright the former entered the building located on one of the 30 lots of Staford Heights Addition belonging to him and changed the locks and excluded Fulbright from the premises. Later Culbertson sold the building to a third party under the theory that it belonged to him and that Fulbright had no interest in the proceeds of the sale. In its judgment the trial court treated the

building as personalty belonging to Fulbright which was converted by Culbertson. Judgment in the sum of $1,500.00 was awarded in favor of Fulbright and against Culbertson pursuant to the theory of conversion, with legal interest thereon from date of May 17, 1965, upon a finding that $1,500 represented its fair market value at the time.

By a point of error Fulbright contends that the undisputed evidence upon the market value of the building was to the effect that said value was $2,000.00, wherefore the judgment to which he was entitled should have been in said amount.

The testimony on value was from Fulbright and no other person. That testimony amounted to an opinion upon value received from an interested person. In such an instance the jury or other fact finder is at liberty, within the bounds of reason, to make a determination of value up to the amount as to which there was testimony and findings of a lesser amount is to be considered as supported by the evidence. Simmonds v. St. Louis, B. & M. Ry. Co., 127 Tex. 23, 91 S.W.2d 332 (1936).

## SECOND CASE

During the period of time when Fulbright and Culbertson were in a friendly relationship there was alleged to have been a four-party partnership agreed upon and organized with the purpose and objective of constructing residences. Building activities might be conducted anywhere, though some were erected on Culbertson's property in Staford Heights. The name of the organization was agreed to be C. M. & Associates, Inc. Though chartered as a corporation the operations conducted in its name actually constituted an operation by partners.

Raymond E. Ford and Fulbright sued Charles E. Mills, Culbertson, and C. M. & Associates, Inc. (as a partnership), to establish the fact of the partnership and that they had been wrongfully ousted from partnership operations and participation. Incident thereto they sought an accounting and recovery of judgment for their shares of the partnership profits.

Judgment rendered as applied to this SECOND CASE was against the claim of Fulbright, but it was in favor of Ford. The judgment rendered in favor of Ford was for recovery by him of one-fourth (1/4th) of the profits earned by the building partnership, C. M. & Associates, Inc. It is upon the percentage of partnership interest and the percentage of recovery in the profits allowed him by the judgment that Ford raises questions on appeal. Fulbright's complaint is of the court's refusal to find that he had any interest in the partnership, C. M. & Associates, Inc.

■ We have concluded that there was reversible error in the court's adjudication that Ford was entitled to a one-fourth rather than a one-third interest in the partnership, and to a one-fourth rather than a one-third interest in the profits of the partnership. As applied thereto we might be empowered to reform and affirm the judgment as so reformed, but we are of the further opinion that same, as applied to Ford, should be remanded because findings in respect to profits and Ford's portion thereof were contrary to the great weight and preponderance of the evidence.

■ The court found, upon adequate evidence, that Fulbright was not entitled to any interest in the partnership and hence not entitled to share in the profits. The findings were not contrary to the great weight and preponderance of the evidence. Therefore judgment denying recovery to Fulbright was correct and should be affirmed.

Basis of the trial court's decision to award Ford one-fourth rather than one-third interest in the partnership and in the profits earned by it was predicated upon the state of the pleadings at time all the evidence was closed. In view of our remand it is a certainty that another trial would be conducted under amended pleadings. Therefore no occasion to lengthen this opinion by discussion is presented.

Applicable to the matter of accounting and findings and adjudication as to profits of the partnership, error appears to have occurred in view of the fact that in some instances amounts were apparently erroneously excluded as "profit", and other instances where proper credits were not applied to indebtedness whereby the partnership "net profit" seemingly should have been enhanced. The latter is of importance when the relative obligations of the partners in their agreed investments by way of property or services are considered. It was by reason thereof their interest in profits was agreed to be one-third as to each. Additionally, there appeared to have been instances where amounts not actually expended from the coffers of the partnership were credited as expenditures actually made in a reduction of the ultimate "net profit" figure. There was some lack of full and fair disclosure in the evidence of Mills and Culbertson, in discharge of the burden incumbent upon them to make such upon the accounting.

Anticipating the contention that the letter of the points of error do not spell out the contention that the findings relative to the accounting are against the great weight and preponderance of the evidence, we will state that in deciding that such question is sufficiently advanced as complaint on appeal we have considered not only the language of the listed points, but also the statements and arguments thereunder. It is by construction of the whole of the presentation of Ford, under his points of error, that we deem the question adequately raised for our decision. Texas Rules of Civil Procedure 418, "Briefs: Contents"; Fambrough v. Wagley, 140 Tex. 577, 169 S.W.2d 478 (1943).

The judgment of Raymond E. Ford as against C. M. & Associates, Inc., Charles E. Mills, and R. Sam Culbertson is reversed and remanded. The judgment denying any and all relief as prayed for by William Staford Fulbright is affirmed.