**John C. BRADFORD, d/b/a Brad's Petroleum Co., and the United States of America, Appellants,**

**v.**

**Robert E. RAIN, Jr., Trustee, and National Distillers and Chemical Corporation, Appellees.**

**No. 8519.**

Court of Civil Appeals of Texas, Texarkana.

Feb. 7, 1978.

Rehearing Denied March 7, 1978.

Pat C. Guillot, Collie, McSpedden & Roberts, Dallas, Charles D. Cabaniss, Asst. U. S. Atty., Dallas, for appellants.

Marshall M. Searcy, Jr., Rain, Harrell, Emery, Young & Doke, Dallas, for appellees.

ODEN, Justice.

John C. Bradford, d/b/a Brad's Petroleum Company, and the United States of America, have perfected the appeal from the portion of the judgment entered by the 44th Judicial District Court of Dallas County, Texas, decreeing, pursuant to the Uniform Declaratory Judgments Act, Article 2524–1, Tex.Rev.Civ.Stat., that National Distillers and Chemical Corporation was the equitable owner of certain oil producing properties held in trust by Robert E. Rain, Jr., Trustee, free and clear of certain tax liens filed by the United States of America. A monetary judgment was also awarded in favor of National Distillers and Chemical Corporation against John C. Bradford, however, there have been no exceptions levied against that portion of the judgment. Appellants will be referred to as "Bradford" and "USA." Appellees will be referred to as "National" and "Rain."

Bradford was the chief executive officer and sole shareholder of Brad's Machine Products, Inc. Brad's Machine Products Company, a California corporation, is not involved in the lawsuit. On August 1, 1969, Brad's Machine Products, Inc., owed Bridgeport Brass Company, a division of National, $630,000.00 for materials purchased. During the month of August, 1969, National advanced an additional $600,000.00 to Brad's Machine Products, Inc. as a loan and simultaneously agreed to defer payment of the $630,000.00 account receivable. Two (2) notes were executed to evidence the indebtedness owed National and Bradford personally endorsed both notes. Bradford personally owned certain oil producing properties. On August 25, 1969, Bradford assigned these properties to National. The assignments of August 25, 1969, were in fact mortgages and were not recorded until after the USA filed the notices of tax lien hereinafter alluded to.

Shortly after the August 25, 1969, assignments National discovered that Bradford was indebted to numerous trade creditors for materials furnished in improving the oil producing properties. The aggregate claims exceeded $600,000.00 and the trade creditors were threatening to file mechanic lien claims against the oil producing properties. On October 10, 1969, Bradford and National, following several weeks of negotiations, transferred legal title to the oil producing properties to William D. Neary, Jr. in trust. The assignments were recorded on October 15, 1969, in the deed records of the counties in which the oil producing properties were located. The aggregate of the creditors' claims at this time was $530,-493.25 and Bradford executed a promissory note in favor of each creditor to evidence the obligations.

The trust agreement pursuant to which William D. Neary, Jr., Trustee, held legal title to the oil producing properties is quite lengthy and we will only summarize and quote those portions which we consider to be pertinent. It provided that William D. Neary, Jr., Trustee, would collect all income from the oil producing properties and disperse the net collections on a pro rata basis among the creditors. National was not considered a creditor under the terms of the trust agreement. Both National and Bradford executed the trust agreement as settlors, however, National only owned a mortgage at that time. The trustee was not authorized to convey the oil producing properties to third parties if $25,000.00 per

month was made available for distribution among creditors, however, if such sum was not available per month the trustee was authorized, upon direction from the creditors' committee, to convey the oil producing properties to third parties with the proceeds derived from such transfer to be divided among the creditors on a pro rata basis. The trust agreement is silent as to what disposition the trustee should make of any excess funds in the event the proceeds from a sale of the oil producing properties exceeded the aggregate claims of the creditors. The trust agreement did provide that:

"In the event the net amount of $25,000 is made available to the Trustee and the Creditors are paid in full, together with interest, the amount of their indebtedness as shown in Exhibit A then the Trustee shall reconvey and assign the producing properties subject to the Assignment to National."

The principal basis for the appeal involves a construction of the foregoing quoted paragraph.

On March 25, 1971, the USA filed notices of tax lien against Bradford in the appropriate records of the counties in which the oil producing properties were located in an attempt to secure an indebtedness in the amount of $3,112,951.30 plus interest owed by Bradford. The notices of federal tax lien were filed before the assignments dated August 25, 1969, were filed for record, but after the assignments dated October 10, 1969, were recorded. The net amount of monies collected by William D. Neary, Jr., Trustee, for distribution among creditors fell below $25,000.00 per month well in advance of March 25, 1971, the date the USA filed its notices of federal tax lien, however, the creditors' committee did not direct the trustee to dispose of the oil producing properties and apply the net sale proceeds toward liquidation of their indebtednesses. At the time of trial, National was the owner and holder of the notes executed by Bradford in favor of the trade creditors and Rain was the substitute trustee under the trust agreement.

National contends that it owns equitable title to the oil producing properties by virtue of the quoted provision of the trust agreement dated October 10, 1969, subject only to the right of the trustee to collect the income in order to discharge the indebtednesses formerly held by the trade creditors but now held by it. The USA and Bradford contend that the provision that a net amount of $25,000.00 per month be available to the trustee for distribution among the trade creditors is a condition precedent to equitable title vesting in National and upon failure of the condition prior to March 25, 1971, the date the USA filed its notices of federal tax lien, title to the oil producing properties, subject to the right of the trustee to collect the income to pay the trade creditors, reverted to Bradford, as owner, and National, as mortgagee, under the August 25, 1969, assignments which were not filed for record prior to the date the USA filed its notices of tax lien. In effect, appellants claim that National only holds a mortgage which is subordinate and inferior to the liens held by the USA. The jury found that the October 10, 1969, agreement superseded the agreement of August 25, 1969, and that both Bradford and National had an expressed mutual intent in executing the documents dated October 10, 1969. As stated, judgment was entered that National held equitable title to the oil producing properties free and clear of the tax liens asserted by the USA.

■ The effect of the jury's finding that Bradford and National had an expressed mutual intent in executing the trust agreement on October 10, 1969, is that such document should be construed as written. In construing the trust agreement we have followed the rule that instruments of conveyance should be interpreted so as to ascertain and effectuate the intention of the parties. *City of Dallas v. Etheridge*, 152 Tex. 9, 253 S.W.2d 640 (1952).

■ In our opinion, the provisions in the trust agreement pertaining to the trustee collecting $25,000.00 per month for distribution among creditors are in fact limitations on the power of the trustee to sell the oil

producing properties rather than an event which must take place before the estate held by National is affected. The trustee was not authorized to sell the oil producing properties if the amount available for distribution among creditors exceeded $25,000.00 per month and if the sum collected fell below $25,000.00 per month, the oil producing properties could only be sold at the direction of the creditors' committee. The event in the document under review which must take place before the estate held by National in the oil producing properties is affected is a sale of the oil producing properties. An occurrence of this event would vest title to the oil producing properties in third parties free of all claims of the parties to the appeal.

The principal distinctions between reversionary interests and remainder interests are (1) a reversion interest arises by operation of law apart from the intent of the grantor whereas a remainder is created only by express limitation and by the same instrument which creates the particular estate, and (2) a reversion interest arises only in favor of a grantor whereas a remainder interest can be created only in favor of a stranger. C. Moynihan, Preliminary Survey of the Law of Real Property, Sec. 5, at 58 (1940). Analyzing the interest held by National in the oil producing properties in light of the foregoing principles, it is obvious that the interest held by National in the oil producing properties was that of a remainderman. The interest was created by the quoted provision of the trust agreement. While it is true that National executed the trust agreement under which it claims title as an assignor, the sole purpose for its joining in the execution was to relinquish the mortgage which was created by the assignments dated August 25, 1969, and for purposes of classifying its interest in the oil producing properties it would be a stranger to the transaction as opposed to a grantor.

It is well settled that a remainder is vested when there is a person in being who would have an immediate right to possession upon the termination of the intermediate estate. *Chadwick v. Bristow*, 146 Tex. 481, 208 S.W.2d 888 (1948); *Reilly v. Huff*, 335 S.W.2d 275 (Tex.Civ.App. San Antonio 1960, no writ); *Grohn v. Marquardt*, 487 S.W.2d 214 (Tex.Civ.App. San Antonio 1972, writ ref'd n. r. e.). The character of a remainder as vested is not affected by an uncertainty as to the question of a quantum which will be received by the remainderman when he becomes entitled to possession. A remainder is not made contingent by uncertainty as to the amount of the estate remaining undisposed of at the expiration of the preceding estate, but by uncertainty as to the persons who are to take. *Chadwick v. Bristow, supra*; *Reilly v. Huff, supra*; *Caples v. Ward*, 107 Tex. 341, 179 S.W. 856 (1915). An analysis of the facts in this case in light of the foregoing principles leads us to the conclusion that National held a vested remainder interest in the oil producing properties subject to complete divestment in the event the trustee exercised his power of sale in accordance with the terms of the trust agreement. National was in existence at the time the trust agreement was executed on October 10, 1969, and it had an immediate right to possession of the oil producing properties upon the creditors being paid in full. The uncertainty was related to the quantum of the estate National would receive and not to whether it would receive the oil producing properties if the trustee did not exercise his power of sale. The event of sale is a condition subsequent inasmuch as it operates upon an estate which has already been created and vested. *City of Dallas v. Etheridge, supra*. This affirms our belief that National held a vested remainder interest in the oil producing properties subject to complete divestment inasmuch as an estate limited upon a contingency, to which the effect of a condition subsequent only is given, vests at once, subject to being divested upon the happening of the contingency. *Caples v. Ward, supra*. Accordingly, Bradford had no interest in the oil producing properties to which the USA's tax liens could attach when notices thereof were filed March 25, 1971. Under no circumstances would title revert to Bradford. The

trustee would either sell the properties to third parties or convey them to National.

The liens asserted by the USA are ones imposed by 26 U.S.C.A. § 6321. Such liens are not valid against a purchaser of real property unless notices thereof are filed in accordance with the laws of the state in which the real property is located. 26 U.S.C.A. § 6323; *Enochs v. Smith*, 359 F.2d 924 (5th Cir. 1966). The assignments whereby title was transferred to the trustee were recorded in advance of the filing of the notices of the federal tax lien. The question thus presented is whether National was a purchaser on October 10, 1969, when it acquired the vested remainder interest. If it was the USA's lien is clearly invalid as to it. A determination of who is a purchaser depends on federal law. *Enochs v. Smith, supra.* The Supreme Court of the United States in *United States v. Scovil*, 348 U.S. 218, 75 S.Ct. 244, 99 L.Ed. 271 (1955), declared that a purchaser usually means one who acquires title for a valuable consideration in the manner of vendor and vendee. National released its mortgage against the oil producing properties when it joined in executing the documents dated October 10, 1969. It is possible that the claims of the trade creditors were superior to National's mortgage, however, National released its claim of superiority when it joined in executing the documents. We hold that the release of this claim constituted a valuable consideration. An effect of our ruling that National acquired a vested interest under the trust agreement is that Bradford was a vendor and National a vendee. The trial court did not err in decreeing that National and Rain own the oil producing properties free and clear of the tax liens asserted by the USA. Furthermore, the jury found that there was consideration for Bradford executing the documents on October 10, 1969. This finding is supported by the evidence.

Bradford and the USA claim that National's interest in the oil producing properties is that of a mortgagee. It is well settled that a conveyance absolute on its face may be shown by parol evidence to have been intended as a mortgage. *Wilbanks v. Wilbanks*, 160 Tex. 317, 330 S.W.2d 607 (1960); *Bradshaw v. McDonald*, 147 Tex. 455, 216 S.W.2d 972 (1949). The assignments dated October 10, 1969, were conveyances absolute on their faces. Bradford and the USA had the burden to obtain a finding that the documents dated October 10, 1969, were intended as mortgages. *Fulbright v. Culbertson*, 429 S.W.2d 179 (Tex. Civ.App. Fort Worth 1968, writ ref'd n. r. e.). They failed in their burden. On the contrary, the jury found that Bradford and National had an expressed mutual intent when they executed the documents on October 10, 1969.

Bradford also complains of the form of a special issue submitted to the jury pertaining to whether or not the USA had actual notice of National's claim against the oil producing properties. The jury found that the USA had such notice, however, that finding should not form a basis for the judgment inasmuch as we have held that National was a purchaser as that term is used in 26 U.S.C.A. § 6323.

John Salisbury, an employee of and witness for National, testified that National lost some $5,060,000.00 in its dealing with Bradford due to Bradford's inability to pay and that the value of the oil producing properties in 1969 was less than $500,000.00. Bradford offered into evidence a document purportedly executed by an officer of National which indicated National made a profit in its dealings with Bradford and two engineering reports which indicated that the market value of the oil producing properties was $493,000.00 in 1970 and $550,000.00 in 1974. National's objections to these documents being introduced into evidence were sustained. Bradford complains that the documents should have been admitted into evidence for the limited purpose of impeaching the witness, John Salisbury. We do not agree. The statements and conclusions contained in the proffered documents were not inconsistent with the challenged testimony and accordingly were not admissible for the purpose of impeachment. *Bituminous Casualty Company v. Martin,*

478 S.W.2d 206 (Tex.Civ.App. El Paso 1972, writ ref'd n. r. e.). The document which supposedly indicated National made a profit in its dealings with Bradford was based on the assumption National would collect its debt. Since this simply is not the case, it could not be contradictory. The engineering report reflecting value in the year 1974 could not contradict Salisbury's testimony as to value in the year 1969. The report prepared by the engineering firm reflecting value for the year 1970 indicated a value of $493,000.00 and the witness testified to a value of less than $500,000.00. Again, there is no contradiction.

The judgment of the trial court will be affirmed.